# WEIMER *v.* LOWERY *et als.*

In an action to abate a nuisance, caused by the running a ditch for the conveyance of water across the land of the plaintiff, the defendants set up in their answer, among other things, the following : " That said tract of land is situated in the heart of the mineral regions of said State, and is a part of the public domain belonging to the government of the United States, and that said government has never granted or conveyed the same, or any part thereof, to the said plaintiff." " They further say that their said ditch was constructed in the summer of 1855, and has been used ever since, and still is, for the purpose of conveying the waters of the South Fork of the American river from a point about five miles above said land to gold mining localities lower down, and in the vicinity of said stream, there to be used for gold mining purposes ; that the same is fourteen miles in length, and was constructed for the purposes aforesaid at a cost to said defendants of about $20,000 ;" which allegations were stricken out, on motion of plaintiff's attorney : *Held*, that they were properly stricken out, as irrelevant; for, if true, they constituted no defense to the action.

The statute making possessory rights of settlers on public lands for agricultural or grazing purposes yield to the rights of miners, has legalized what would otherwise be a trespass, and the act cannot be extended by implication to a class of cases not especially provided for.

A person has no right to construct a ditch through the inclosure of another without his consent.

A new trial will not be granted on the ground of newly discovered evidence, which is alleged to be a deed, recorded in the County Recorder's office a year before the trial, and the record of a judgment in the same Court in which the cause was tried.

APPEAL from the District Court of the Eleventh Judicial District, county of El Dorado.

This was an action under the 249th section of the Practice Act.

Complainant alleges that he is the owner and in possession of a lot of ground in Coloma, on which he has a family residence and cultivates a garden and orchard ; that defendants, against his will, had dug a ditch across a portion of the lot for the purpose of conveying water ; that by the cutting of this ditch and throwing the earth from it over a portion of his lot, it was rendered unfit for cultivation ; that his property is injuriously affected, and his use of it obstructed by the ditch of defendants. He therefore asks that it be abated as a nuisance.

Defendants' answer denies the ownership of the plaintiff; upon information and belief, denies that plaintiff had expressly forbid the construction of the ditch ; but admits that he requested them to take it across the lot at a different point. They deny that the land is inju-

Weimer *v.* Lowery.

riously affected by the ditch; but aver that it is benefited by it. Defendants also allege that the land in question was situated in the mining region; was the property of the United States, and that their ditch was constructed in 1855, for the purpose of conveying water to be used for mining purposes from the American river to gold mines in the neighborhood of the premises; was fourteen miles in length, and had cost $20,000.

The allegations were, on motion, stricken out by the Court, as irrelevant; the cause was submitted to a jury, who found that plaintiff was the owner, and in possession of the premises at the time the ditch was constructed; that it was cut on his land without his consent, and that the ditch injuriously affected the lot, and interfered with its comfortable enjoyment by plaintiff.

Upon this verdict a judgment was rendered, requiring the nuisance to be abated. Defendants moved for a new trial, which was overruled, and appeal taken.

*Sanderson & Hewes,* for Appellants.

1st. The Court below erred in striking out that portion of the answer which alleges that the lot claimed by the respondent, and upon which the pretended nuisance was created by appellants, was in the heart of the mineral region, and was public land, and had never been conveyed by the government to respondent or any of his grantors.

2d. The Court below erred in striking out that portion of the answer which alleges that appellants' ditch was dug in the summer of 1855, and has been used ever since, and still is, for the purpose of conveying the waters of the South Fork of the American river from a point about five miles above respondent's lot to gold mining localities lower down, and in the vicinity of said stream, there to be used for gold mining purposes; that the ditch is fourteen miles long, and was constructed at a cost of $20,000.

3d. The only facts upon which the judgment is based are found in the special verdict, which is as follows:

" We, the jury, find:

" *First*—That the plaintiff was the owner and in possession of the

7

lot of land described in the complaint at the time defendants' ditch was dug, and is still the owner.

"*Second*—That such ditch was dug through said lot by defendants, and without the consent of plaintiff.

"*Third*—And that said ditch does interfere with the comfortable enjoyment of said lot, and injuriously affects said lot."

These facts are insufficient to sustain the judgment of the Court below, directing the abatement of appellants' ditch.

4th. The Court below erred in refusing a new trial, because the statement and affidavits, the deed from Gordon to Weimer, (which action was brought to enforce a vendor's lien) all show that the respondent was not the owner of the lot at the time the ditch was dug.

As to first point. The action of the Court below in striking out those parts of the answer specified in the first and second points above set forth, can only be sustained upon the ground that they are sham or frivolous. A sham answer and defense is one that is false in fact, and not pleaded in good faith. "A frivolous answer is one that shows no defense, conceding all that it alleges to be true." (Brown v. Gimsan, 1 Code Rep., New Series, 1856.) It is not contended that the portions stricken out of the answer in this case come within the definition of a sham answer given above; but it is contended that they come within that of a frivolous answer, and therefore we shall confine our attention to the latter question.

This action grows out of an alleged nuisance. In such actions damages may be recovered, or the nuisance abated, or both may be done. (Practice Act, sec. 249.) So far as the abatement of the nuisance is concerned, it is a chancery action. "The action may be enjoined or abated." This leaves it to the discretion of the Court; and whether the Court will do either or not depends entirely upon the equity of the case. (As to its being in the discretion, see Bemis v. Clark, 11 Pick. 452, where a similar statute is construed.)

For the purpose of enabling the Court to exercise its discretion understandingly and equitably, it was proper to plead the matters in question; for if the plaintiff sustained but trifling injury from the alleged nuisance, which could be readily compensated in damages, and an abatement of the nuisance would operate to the irreparable or great

injury of the defendants, equity requires that the plaintiff should be content with his damages, and the Court should exercise its discretion accordingly.   Hence, the fact that the land was public land, and that the works of defendants were of great value and importance, were properly pleaded, for the purpose of enabling the Court to render such a judgment as equity between the parties should dictate.   The plea of public land was proper, for the reason that, if the ditch was dug prior to plaintiff's title, he took it as he found it, and subject to all rights antecedently acquired.   Crandall *v.* Woods, 8 Cal. Rep. 136.

The Court below has, however, acted upon the hypothesis that the fact of nuisance being determined, it followed of course, as a matter of law, that the nuisance must be abated, regardless of consequences. In this the Court was mistaken, as we shall endeavor to show hereafter, and consequently erroneously struck out those parts of the answer in question.

As to the second point, to wit : insufficiency of the facts found to sustain the decree.   The facts are, that plaintiff was the owner at the time the ditch was dug, and is still; that the ditch was dug *without* his consent, and that it injuriously affects the lot, &c.   No damages are found, notwithstanding they are prayed for in the complaint.   The jury do not find that, at the time the ditch was dug, the plaintiff forbade the defendants from digging it, but that they dug it *without* his consent.   What is the meaning of the words, " without his consent ?" Does it mean that he forbade them ?   Most certainly not ; the words certainly convey no such idea.   The meaning is simply that the defendants dug the ditch without first obtaining the plaintiff's permission, or that he gave no *express consent.*   The most latitudinous interpretation of the words cannot assign them any other meaning. If we are correct in our understanding of the verdict, the plaintiff occupies the position of standing silent, while the defendants were engaged in constructing the ditch, and is now estopped.   Having stood silent, and suffered the defendants to expend their labor and money without objecting, he cannot now disturb their enjoyment of it. 6 Adol. & Ell. R.  469 ; 9 B. & C. R.  586 ; 3 B. & Ad. R. 318, note A ; 3 Gim's Ch. Rep. 116.

But concede, for the sake of the argument, that the true meaning

of the verdict is that the respondent forbade the appellants to dig the ditch ; even then we say that the facts do not sustain the judgment. In order to show himself entitled to an abatement of the ditch, the plaintiff must show it to be such a nuisance as a Court of Equity would enjoin ; he must show such an injury as cannot be compensated in damages. He has entirely failed to show such a case. For the two years during which this pretended nuisance has existed, he has claimed only three hundred dollars damages ; and the jury, upon his own showing, refused him any damages. The injury, upon the plaintiff's own showing, and according to the verdict, is of the most trifling character. Courts of Equity will not interfere, unless the trespass produces irreparable injury or great mischief. It is not every technical nuisance that a Court of Equity will abate ; but where the injury is trifling, and can be fully compensated in damages, it will leave the party to his judgment at law for damages ; and more especially as in this case, where an abatement would result in a great and irreparable injury to the opposite party. Beamis *v.* Clark, 11 Pick. 452.

" When an injury will admit of a pecuniary compensation, a Court of Equity will never interpose." Ingraham *v.* Dumell, 5 Metcalf Rep. 118.

As to the fourth point, to wit : the Court erred in refusing a new trial. The judgment roll in Gordon *v.* Weimer shows that that action was brought to foreclose a vendor's lien. The present plaintiff allowed judgment by default in that case. This, taken in connection with the conveyance from Gordon, shows that the plaintiff was not the owner of the lot at the time the ditch was dug; if so, he could not maintain the action until after he had formally notified the defendants to abate the nuisance. Lupton *v.* McLincoln, 1 Stew. 133.

*Thos. H. Williams* for Respondent.

Our statute prescribes that an answer, among other things, may contain " any new matter *constituting a defense* to the action." Wood's Digest, page 173, sec. 46.

And provides that " irrelevant and redundant matter contained in a pleading may upon motion be stricken out." Page 174, sec. 57.

And defines a material allegation to be "one essential to the claim or *defense*, and which could not be stricken out without leaving the pleading insufficient."

Irrelevant matter and redundant matter is such, which, if taken as true, does not constitute a cause of action or a *defense* to the action.

This Court has again and again decided that a defendant in an action respecting land, would not be permitted to set up outstanding title in another, or in the government, and that as between individuals, possession should be held "*prima facie*" evidence of title; then clearly the Court below was correct in striking out the allegation that the land belonged to the government, and that the government had not conveyed to plaintiff, because, if true, the facts stated constituted no defense.

The same may be said in regard to the other matter stricken out, for this Court has often decided that a trespasser upon the rights of another, who is digging a ditch, cannot justify that he intends the water for mining purposes; and the value of his ditch is immaterial, as the dollars and cents in question cannot affect the rights of the parties. Fitzgerald v. Urton, 5 Cal. 308; Tartar v. Spring Creek Water and Mining Co. 5 Cal. 395; and Burdge v. Underwood, 6 Cal. 45.

I invite special attention to the last case cited, as it is more directly in point than cases are usually found.

The cause of action, the judgment sought, the facts in the case, and the judgment rendered, agree precisely with this case, with this exception—the Court there finds one hundred and fourteen dollars damages, the cost of filling the ditch, while in this case the judgment requires the defendants to fill it at their own cost, or if they fail to do so, the Sheriff shall fill it at defendant's cost, which will amount to a greater sum than the one hundred and fourteen dollars in the other case.

I might here rest the case, but as counsel for appellants have seen fit to encumber the record with other questions, it may not be improper to briefly notice some of them.

They say "that the plea of public land was proper, because if the ditch was dug before plaintiff took up the land, he took it as he found it, subject to all rights, &c."

This is a fair specimen of the defense, and can be answered in two ways:

1st. If defendants dug the ditch before plaintiff's location of the land, they should have positively and unequivocally averred the same, and not reach it by saying that the land *belonged* to the government.

2d. The complaint charges that plaintiff became the owner and possessor of the land in 1852, and that he was in possession when defendants commenced digging their ditch in 1855; and defendants do not deny either allegation—on the contrary, the answer admits the possession.

Appellants' counsel quibble as to whether the jury meant that plaintiff forbade the defendants entry upon his lot; but conclude at length that the question is immaterial.

The verdict must be taken in connection with the pleadings, and it will be found that the only issue made upon this branch of the case was, whether defendants entered against the will of plaintiff; and upon that point the jury find for plaintiff. It will be observed that the denial of defendants is evasive, and that they do not even notice the allegation which charges that plaintiff has frequently requested a removal of their works, and that the ditch be filled.

But they say that plaintiff stood by—saw their work going on without forbidding it—thereby tacitly consenting to the trespass.

To which there are two answers:

1st. The entry by defendants was "*prima facie*" a trespass, and *they* must show consent, either express or implied, in defense. They fail to charge the same in the answer, to prove it or to show it by the verdict.

2d. The jury find generally the entry against the *consent* of plaintiff, which according to strict language includes both express and implied consent, and the presumption is, that they intended their language to be understood in its ordinary acceptation.

Appellants contend, however, that conceding this a nuisance, still it is not such a one as should be enjoined or abated.

Upon this subject I understand the following to be the correct rules of law:

1st. That every trespass or injury, however slight, is the subject of an action.

2d. That an injury which would merely entitle the party to nominal damages is not such as would authorize an injunction or abatement.

3d. That where the injury is more than nominal, and interferes with the comfortable enjoyment of property, Courts of Equity will interpose and prevent its continuance.

Having discussed this subject at some length in the case of Harvey *et al. v.* Chilton *et al.*, tried at this term, I shall forbear extending my remarks at this time, but respectfully refer the Court to that case, and the authorities there cited, both by the counsel on the other side and myself.

In this case, the jury returned a verdict finding, in the language of the Act, that the ditch complained of does injuriously affect plaintiff's lot, and interferes with his comfortable enjoyment of it. And having so found, it was then in the discretion of the Court to abate the nuisance; and I presume this Court will not say that such discretion was improperly used.

The complaint describes the character of the ditch, and shows its effects upon the land, and the answer does not controvert such description, from which it appears that a strip of plaintiff's lot, from one side to the other, and from four feet to ten or twelve wide, is rendered unfit for use so long as the ditch may remain on it, and necessarily it is inconvenient to pass over the ditch, which can only be done by small bridges, to cultivate the northern part of the lot.

Again calling attention to the case of Burge *v*. Underwood cited, I leave the case with a suggestion or two, in reference to the motion for new trial.

This motion is made upon the ground of newly discovered evidence, to wit: that Weimer was not the owner of the land upon which the nuisance was created.

The answers to this motion are more numerous than necessary to state, and I will therefore only give :

1st. The affidavit is made only by one defendant, when there were many, and does not pretend that the newly discovered testimony was unknown to his co-defendants. It is true, he says that he had the *chief* defense of the case, and I presume that his co-defendants did the *small* work.

.2d. The deed and record which he exhibits shows that the deed from Gordon to Weimer was executed and filed in the County Recorder's office nearly one year before the commencement of this action, and the suit of Gordon *v.* Weimer had been terminated before this was commenced. How, under the circumstances, attorneys could have induced their client to swear that he by "due diligence" could not have discovered the evidence before trial, I cannot understand.

3d. Weimer shows by his answer that, in fact, the land was his long before the deed was executed, the latter being withheld until the purchase money should be paid.

4th. Possession is sufficient to maintain the action against a *continuance* of the nuisance.

5th. The application should show that the evidence is *new, material,* not *cumulative ;* has been discovered since the trial, and could not have been, by due diligence, discovered before trial, and will not be granted if the facts stated are fully controverted by counter affidavits. Bartlett *v.* Hogden, 3 Cal. 55; Brooks *v.* Lyon, (*Ibid*) 113; Burritt *v.* Gibson, (*Ibid*) 396.

TERRY, C. J., after stating the facts, delivered the opinion of the Court—FIELD, J., concurring.

The assignments of error are, *first,* in striking out part of defendants' answer; *second,* that the verdict of a jury did not warrant the judgment; and *third,* refusal of the Court to grant a new trial on the ground of newly discovered evidence.

The first point is not well taken. It has never been held that a tresspasser upon lands in the possession of another can justify his acts by setting up an outstanding title, in which he has no privity. Nor has it ever been decided that the fact that a party is engaged in the construction of a work requiring a large pecuniary expenditure, will justify a trespass on private property. The allegations were properly stricken out as irrelevant—because, if true, they constituted no defense to the action.

The second point is answered by the decision of this Court in Burge *v.* Underwood, (6 Cal. 45) the findings of which are entirely analagous to the special verdict in this case.

The third objection is that the Court erred in refusing a new trial, on the ground of newly discovered evidence. The evidence set out in the affidavit consisted of a deed, which had been recorded in the County Recorder's office more than twelve months prior to the trial, and the record of a judgment in the same Court in which the cause was tried; and we are not able to perceive why this evidence could not as well have been discovered before the trial, by the exercise of the slightest degree of diligence.

Judgment affirmed.