[Civ. No. 2861. Second Appellate District, Division Two.—February 27, 1919.]

# D. FELSENTHAL, Appellant, v. M. D. WARRING et al., Respondents.

[1] EASEMENT—WATERS AND WATERCOURSES—RIGHT OF WAY FOR IRRIGATION DITCH—DESTRUCTION BY FLOOD—RECONSTRUCTION OVER NEW LINE—ERRONEOUS REFUSAL OF INJUNCTIVE RELIEF.—After the washing out by flood of an open earthen ditch, by means of which the defendants in this action had acquired and had for many years enjoyed the right to conduct water over plaintiff's lands along a definite and well-established line from a point of diversion from a creek on plaintiff's land to lands of defendants below, where defendants used the water for irrigation, the defendants had no right to reconstruct and maintain a ditch of a different character on plaintiff's lands, along a line distant from twenty-five to forty feet from the former line, and the trial court after the reconstruction of the ditch by the defendants on the line last described, erred in refusing the plaintiff an injunction to restrain its maintenance, and in adjudging that defendants had an easement in plaintiff's land for the construction and maintenance of the new ditch line.

[2] ID.—NATURE OF EASEMENT.—The defendants' right of way having been acquired either by prescription or while the plaintiff's land was still a part of the public unoccupied lands of the United States, the defendants' right in plaintiff's lands, whatever its source, was simply to continue the use thereof which they were enjoying at the time plaintiff acquired the land.

[3] ID.—LOCATION OF DITCH PRIOR TO FLOOD—RIGHTS ACQUIRED THEREBY.—The right of way for the ditch having been definitely fixed by the acts of the parties prior to the flood which washed it out, the defendants had acquired the right to that particular location and no other.

[4] ID.—RECONSTRUCTION OF DITCH.—On reconstructing the ditch after its destruction by flood, there was no principle of law that warranted the defendants subjecting to their use another and different portion of the plaintiff's land without his consent.

[5] ID.—CHANGING LOCATION OF DITCH.—The location of an easement of this character cannot be changed by either party without the other's consent after it has been finally established, whether by express grant or by prescription.

[6] ID.—SLIGHT EXTENT OF CHANGE IMMATERIAL.—The acquisition of a right of way over one portion of a person's land gives the grantee no right over any other portion, and it is immaterial that the new line

for an irrigation ditch constructed after the washing out of an old one was only from twenty-five to forty feet distant from the old line.

[7] ID.—CHANGE NOT WARRANTED BY SECTION 806 OF CIVIL CODE.—Section 806 of the Civil Code, which provides that the "extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired," does not warrant the contention of the defendants that because they had acquired a right to divert water from a creek at a point of diversion, on plaintiff's land, they necessarily acquired as incident thereto a right of way for a ditch over the land, and that, therefore, if the way formerly used be destroyed by flood or other act of God, they may reconstruct the ditch along a new line, provided it be the one that will entail the least injury to the plaintiff's land.

[8] ID.—CASE AT BAR—NATURE OF SERVITUDE.—Where, as in the case at bar, the nature of the respondents' enjoyment of the servitude prior to the washing out of the ditch consisted in conducting water in an open earthen ditch that followed a certain well-defined and established course over appellant's land—a line that had been established for many years—that line and none other fixed the extent of the servitude that rested upon appellant's realty.

[9] ID.—APPROPRIATION OF WATER ON GOVERNMENT LANDS—NATURE OF RIGHT.—The right of an appropriator of water on government land that has since become private property to divert the water at any particular place of diversion and conduct it to his own land over the land that has passed into private ownership is the right of the grantee of an easement, including such secondary easements as are necessary for the full enjoyment of the primary easement, such as the right to enter on the servient tenement to make necessary repairs, but not to increase the burden on the servient tenement by any alteration in the mode of enjoyment of the primary easement.

[10] ID.—SECONDARY EASEMENTS—CHANGING MODE OF ENJOYMENT.— The right of secondary easement is not a right to change the mode of enjoyment, if such change increases the burden on the servient tenement, as by shifting the line of a ditch every time a flood or freshet washed away or ate into the bank of the stream.

[11] ID.—RIGHT TO APPROPRIATE WATERS—RIGHT TO CONSTRUCT DITCH DOES NOT FOLLOW.—The right to appropriate waters does not carry with it the right to burden the lands of another with a ditch, although the proposed appropriation cannot be effected without the ditch.

[12] ID.—INJUNCTIVE RELIEF—MANDATORY INJUNCTION—GENERAL RULE. It is a general rule, to which there are a few well-recognized exceptions, that when one, without right, attempts to appropriate the property of another by conduct which will ripen into an easement,

a court of equity will compel the trespasser to undo, so far as possible, what he has wrongfully done.

[13] ID.—EXCEPTIONS.—A court of equity may decline to issue a mandatory injunction where the defendant is engaged in a business that serves the public, or where, by innocent mistake, erections have been placed a little upon plaintiff's land, and the damage caused to defendant by their removal would be greatly disproportionate to the injury of which the plaintiff complains.

[14] ID.—SUBSTANTIAL INJURY TO JUSTIFY INJUNCTION.—To justify an injunction, there must be substantial injury, which, however, does not necessarily involve substantial damage.

[15] ID.—INJUNCTION—COMPARATIVE INJURY FROM GRANTING AND WITHHOLDING—BALANCING OF CONVENIENCES.—The rule that a chancellor will refuse to enjoin when greater injury will result from granting than from refusing an injunction has no application where the act complained of is in its incidents tortious; there can be no balancing of conveniences when such balancing involves the preservation of an established right, however small, which will be extinguished if relief be not granted against one who would destroy it.

[16] ID.—INJURY TO LAND—NUISANCE PER SE—INJUNCTION NOT DEPENDENT ON EXTENT OF PECUNIARY DAMAGE.—In case of an injury to the land of another that is a nuisance *per se,* the right to an injunction does not depend upon the extent of the damage measured by a money standard, and the maxim, *De minimis,* etc., has no application.

[17] ID.—BALANCE OF CONVENIENCE—DOCTRINE INAPPLICABLE TO FINAL DECREES.—The doctrine of "balance of convenience" though frequently determinative of the propriety of granting or refusing preliminary injunctions, has no application to final decrees on hearing on plenary proofs.

[18] ID.—JUDGMENT AND FINDINGS IN FAVOR OF DEFENDANTS ERRONEOUS.—In this action to enjoin the defendants from maintaining a reconstructed irrigation ditch on land of the plaintiff other than that over which the record shows they had acquired an easement, the judgment and findings that the defendants are the owners of an easement in that part of the plaintiff's land and enjoining the plaintiff from asserting any right adverse to that easement are alike erroneous.

[19] ID.—RIPARIAN OWNER—ERRONEOUS LIMITATION OF RIGHTS TO DIVERT WATER.—The plaintiff in the present action being a riparian owner, the court erred in attempting by the decree to limit his right to divert the water to a fixed quantity, since as a riparian owner he had the right to have all the waters flow through his land in their accustomed way except as decreased by the reasonable use of other riparian proprietors or prior appropriators.

[20] Id.—Appropriator's Right to Water—Defendants' Ownership of Waters of Creek—Finding Unsupported by Evidence.—In such action a finding that the defendants owned the waters of the creek to the extent of sixty inches, that being the capacity of the defendants' ditch, was unsupported by evidence and erroneous, since the extent of an appropriator's or adverse user's right is limited not by the quantity of water actually diverted, nor by the capacity of his ditch, but by the quantity which is or may be applied by him to his beneficial uses, and there was direct evidence in the record that sixty inches greatly exceeded the amount necessary for the defendants' beneficial uses.

[21] Id.—Award of Certain Number of Inches—Meaning.—An award of sixty inches in a decree in such case means sixty inches "constant flow."

[22] Appeal—Conflict of Evidence—Finding Based on Erroneous Theory of Law.—The rule that an appellate court will not reverse a finding if there is a substantial conflict of evidence does not extend to a case where it is clearly apparent that the finding is based on an erroneous theory of the law applicable to the evidence.

APPEAL from a judgment of the Superior Court of Ventura County. John M. York, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Chas. F. Blackstock for Appellant.

Haas & Dunnigan and Robert M. Clarke for Respondents.

FINLAYSON, P. J.—The controversy which resulted in this action arose concerning the right to water flowing in Hopper Creek, in Ventura County, and the asserted right of defendants to reconstruct and maintain a ditch across plaintiff's land.

Plaintiff owns 137½ acres of land riparian to the creek. Of this tract about thirteen acres are suitable for cultivation. Defendants own lands in the same vicinity, only a small portion of which is riparian to the stream.

[1] In 1870, when plaintiff's land was still a part of the public domain, defendants constructed a dam in the creek at a place within what is now plaintiff's private property. At what time the land now owned by plaintiff ceased to be government land does not appear from the record. From an intake in the dam that defendants thus constructed on what is now plaintiff's property, they diverted water, through a ditch,

across the land that is now plaintiff's. A part of the ditch was in the bed of the creek and a part ran along and upon the westerly bank of the stream. The water thus diverted has ever since been used by defendants below the intake, on their lands, east and southeast of plaintiff's land. In 1878 the channel of Hopper Creek was changed somewhat by the floods of that year. Thereupon defendants constructed a new intake about 350 feet farther upstream, and, at the same time, constructed an additional 350 feet of ditch extending from this new intake to the head of the ditch of 1870. Until the flood of 1914 the ditch, though repaired from time to time, remained approximately as it was when the work of 1878 was completed. The capacity of the ditch is sixty miner's inches, continuous flow. It is made of earth, with an average width of two feet at the bottom and five feet at the top and an average depth of eighteen inches. From the foregoing it will be seen that, at the time when this action was brought, defendants had acquired an easement in plaintiff's land, giving them the right to maintain the ditch, as so constructed, as a conduit for the amount of water that they rightfully might divert from Hopper Creek at the intake on plaintiff's land, for use on their nonriparian lands under the flow of the ditch.

In 1914 a section of the ditch was washed away, as well as the bank along which that part of it had been constructed, making it necessary for defendants to rebuild. This flood of 1914 eroded the westerly bank of the stream so that now the bank is some feet farther west of where it previously had been. Shortly after the washout of 1914, but prior to the commencement of the action, defendants commenced the reconstruction of their ditch on plaintiff's land, and finished the work of reconstruction some time after the action was commenced. Three hundred and fifty feet of this reconstructed ditch defendants constructed along the bank of the creek at a distance of from twenty-five to forty feet west of the old ditch line. The action was commenced while defendants were rebuilding the ditch and before its final reconstruction. At the time of filing the complaint a temporary restraining order was issued. This order was dissolved shortly after the filing of defendants' answer. So that, before the entry of the final decree, defendants had completed the ditch along the new line, three hundred and fifty feet of which was, as we have stated, from twenty-five to forty feet west of where it formerly had been.

Plaintiff testified that, as located, the reconstructed ditch of 1914 would work less injury to his land than if located at any other place on his property, outside of the old location or in the creek bottom, where, he said, it would do him no injury whatever. There also is evidence to the effect that if the reconstructed ditch had been built in the creek bottom, defendants would have to construct it upon an artificial embankment which, in all probability, would be swept away by each recurring freshet. The narrow strip of plaintiff's land—about 350 feet in length and six or more feet in width—so appropriated by defendants in 1914 for their reconstructed ditch, is good sandy loam, suitable for cultivation, upon which corn was growing at the time when this part of the reconstructed ditch was built. Its value, however, does not exceed twelve dollars, and the injury to plaintiff's freehold caused by defendants' appropriation of his land for the reconstructed ditch of 1914 will not exceed twelve dollars. It is no doubt true that, as claimed by defendants, they will sustain considerable loss if they are not permitted to divert from the creek and convey to their orchards, through a ditch on plaintiff's land, the water heretofore so diverted and conveyed by them—a loss much in excess of the twelve dollars damage to plaintiff's land by reason of the change in the line of the ditch.

The complaint sets forth two causes of action. In the first, plaintiff seeks a preventive injunction, enjoining defendants from completing the reconstruction of the ditch along the new line—twenty-five to forty feet west of the old line—and a mandatory injunction requiring defendants to place plaintiff's land in the same condition as before the excavation of the new ditch, which, as we have seen, had been partially reconstructed when the action was commenced. In his second count, plaintiff seeks to quiet his title to the waters of the creek. The court denied plaintiff any injunctive relief whatever; instead, it entered a decree adjudging defendants to be the owners of an easement over plaintiff's land for the construction, maintenance, repair, and reconstruction of a ditch "substantially along the line of the present existing ditch"—that is, along the line of the ditch as reconstructed in 1914, twenty-five to forty feet west of the former ditch line. The court likewise enjoined plaintiff from asserting any right or title adverse to such easement and from interfering with the ditch. The decree declares that plaintiff is the owner of two and three-fifths

inches of water in the creek, for irrigation and domestic purposes; that defendants are the owners of all the water of the creek flowing down to their intake on plaintiff's land, up to sixty inches, excepting the two and three-fifths inches adjudged to belong to the plaintiff; that plaintiff be enjoined from taking more than two and three-fifths inches at any time when the amount flowing to defendants' ditch shall not exceed sixty inches. From the judgment and an order denying his motion for new trial plaintiff appeals.

1. The court erred in denying appellant any injunctive relief and adjudging that respondents have an easement in appellant's land for the construction, operation, and maintenance of a ditch along the new ditch line. Respondents' right to maintain a ditch on appellant's land was the right to continue the ditch that they were enjoying immediately before the flood of 1914. At that time they owned a certain right of way for a ditch of a certain character, acquired either by prescription or while the land was still a part of the public unoccupied lands of the United States. [2] The right of respondents in regard to appellant's land, whatever its source, was simply to continue the use thereof which they were enjoying at the time he acquired the land. Prior to the washout of 1914 the right of way had been definitely fixed and located along a certain definite and well-defined line. [3] The previous location of the right of way for the ditch had been as definitely and finally fixed by the acts of respondents as it would have been had the metes and bounds been set forth in an instrument of grant. They had acquired the right to that particular location and no other. The remainder of appellant's land was his, free from any right of respondents. After the flood of 1914, when they reconstructed their ditch, respondents appropriated for their use different land of appellant. [4] We know of no principle of law that warrants respondents in subjecting to their use another and different portion of appellant's land without his consent. [5] It is elementary that the location of an easement of this character cannot be changed by either party without the other's consent, after it has been finally established—whether it has been established by the express terms of a grant or by conduct that gives rise to a prescriptive title. [6] The acquisition of a right of way over one portion of a person's land, whether by grant or prescription, gives the grantee no right over any other por-

tion. It is entirely immaterial that the new line was only from twenty-five to forty feet distant from the old line. It was upon the property of appellant, over which respondents had no right whatever, and the principle is the same as if the new line had been hundreds of feet away from the old one. (*Vestal* v. *Young*, 147 Cal. 715, [82 Pac. 381].)

Nothing in *Ware* v. *Walker*, 70 Cal. 591, [12 Pac. 475], is inimical to these views. There the bed of the stream, where used by the plaintiff, could not be beneficially used by the defendants and no land available for any useful purpose whatever was invaded—nothing of any value whatever was appropriated. Having used the bed or channel of the arroyo as a part of his conduit for the water that he was entitled to divert, just as he would use an artificial ditch for the same purpose, the plaintiff in that case had the same right to clean out, remove obstructions from and repair the part of his conduit that consisted of the channel bed that he would have had had the whole consisted of an artificial ditch. The stream had become obstructed by the deposits, from natural causes, of gravel in its bed, so as to prevent the flow of water to plaintiff's ditch; by digging a ditch through the sand bar that had formed in the channel of the arroyo, plaintiff did nothing more of injury to the defendant than if he had removed a number of fallen trees which might have been washed down by the floods of winter, and which had lain across the stream, obstructing the flow of the water and preventing it from entering plaintiff's ditch.

[7] Respondents assert that, because they have acquired the right to divert water from Hopper Creek at a point of diversion on appellant's land, they necessarily have acquired, as an incident to that right, a right of way for a ditch over the land; and that, therefore, if the way formerly used for the ditch be destroyed by flood, or other act of God, they may reconstruct the ditch along a new line, provided it be the one that will entail the least injury to appellant's land. To support this contention they cite section 806 of the Civil Code. By this section it is provided that "the extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Whether respondents' title to a right of way for a ditch be regarded as one resting upon an express grant from the government under the act of July 26, 1866, [14 Stats. 251], or upon prescription—an im-

plied grant—the result is the same.   If regarded as an express grant from the government, it was a grant that did not specifically bound or define the right of way.   While the land was still a part of the public domain, the way became definitely fixed and located along a certain line by the conduct of the grantees, the respondents here (14 Cyc. 1161; *Winslow* v. *City of Vallejo,* 148 Cal. 723, [113 Am. St. Rep. 349, 7 Ann. Cas. 851, 5 L. R. A. (N. S.) 851, 84 Pac. 191]) ; and when appellant's land acquired the impress of private property, the terms of the grant could not be changed, without his consent, so as to change the character of the easement or materially increase the burden of the servient estate.   (*McGuire* v. *Brown,* 106 Cal. 660, [30 L. R. A. 384, 39 Pac. 1060]).   If respondents' title be regarded as resting upon prescription—an implied grant—then for the purpose of determining its terms we must look to the nature of the enjoyment by which it was acquired; for, as provided by the code section already quoted, the nature of that enjoyment measures the extent of the servitude.   **[8]**   The nature of respondents' enjoyment of the servitude consisted in conducting water in an open earthen ditch that followed a certain well-defined and established course over appellant's land—a line that had been established for many years.   That line, therefore, and none other, fixed the extent of the servitude that rested upon appellant's realty. (*Allen* v. *San Jose L. & W. Co.,* 92 Cal. 138, [15 L. R. A. 93, 28 Pac. 215] ; *Vestal* v. *Young, supra.*)

**[9]**   The right of an appropriator of water upon government land that has since become private property to divert the water at any particular place of diversion, and conduct it to his own land over the land that has passed into private ownership, is the right of a grantee of an easement.   As a primary easement it, of course, includes what are sometimes called "secondary easements," or the right to do such things as are necessary for the full enjoyment of the easement itself, as, for example, the right to enter upon the servient tenement and make necessary repairs.   But secondary easements do not give the owner of the primary easement the right to increase the burden upon the servient tenement.   "The burden of the dominant tenement cannot be enlarged to the manifest injury of the servient estate *by an alteration in the mode of enjoying the former.*"   (*North Fork W. Co.* v. *Edwards,* 121 Cal. 666, [54 Pac. 69].   The italics are ours.)   **[10]**   The right of

secondary easements is not a right to change the mode of enjoyment, if such change increases the burden upon the servient estate—as would be the case if respondents shifted the line of their ditch every time a winter flood or spring freshet washed away or ate into the bank of the stream. (*North Fork W. Co.* v. *Edwards, supra; Joseph* v. *Ager,* 108 Cal. 517, [41 Pac. 422]; *Oliver* v. *Agasse,* 132 Cal. 297, [64 Pac. 401]; *Snyder* v. *Colorado etc. Co.,* 181 Fed. 62, [104 C. C. A. 136].)

[11] "The right to appropriate the waters of a stream does not carry with it the right to burden the lands of another with a ditch for the purpose of diverting the waters and carrying them to the place of intended use, for that cannot be done without a grant from the land owner, or a lawful exercise of the power of eminent domain; *and this although the particular circumstances be such that the proposed appropriation cannot be effected without the ditch."* (*Snyder* v. *Colorado etc. Co., supra.* The italics are ours.)

[12] Finally, it is contended that appellant is not entitled to any injunctive relief because an injunction is a matter, not of right, but of grace; and that greater injury will result in awarding than in withholding the injunction. The general principle that, when one without right attempts to appropriate the property of another by conduct which will ripen into an easement, a court of equity will compel the trespasser to undo, so far as possible, what he has wrongfully done, is too well established for discussion. [13] To this general rule there are a few well-recognized exceptions. Thus, it has been held that a court of equity may decline to issue a *mandatory* injunction where the defendant is engaged in a business that serves the public; or where, by innocent mistake, erections have been placed a little upon the plaintiff's land and the damage caused to defendant by their removal would be greatly disproportionate to the injury of which the plaintiff complains, and the defendant has proceeded with the erection while laboring under an innocent mistake of fact or a *bona fide* claim of right, and the plaintiff has been guilty of laches. (5 Pomeroy's Equitable Remedies, sec. 508; *Szathmary* v. *Boston etc. Ry. Co.,* 214 Mass. 42, [100 N. E. 1107].) Respondents' contention is that their case presents features that bring it within these exceptions to the general rule. But the appellant here was not guilty of laches, and respondents did not complete the reconstructed ditch in good faith. A large

part of it was completed by them in the face of appellant's objection after the action was commenced and a restraining order issued—the order that subsequently was dissolved.

[14] To justify the issuance of an injunction there must be substantial *injury*. Substantial "injury," however, does not necessarily involve substantial "damage." Where a valuable property right exists—no matter how small its value may be—and that right is substantially and materially interfered with by a nuisance caused by the wrongful use of the property by another, if the injury is of a continuing nature, requiring a multiplicity of suits to secure its redress, the injured owner of the right, if he be not himself at fault through laches or otherwise, is entitled to injunctive relief, not as a matter of discretion on the part of the court, but as a matter of right; and his right to this relief is not affected by any comparison of his loss with that resulting to the defendant by reason of the granting of the relief. [15] The rule that a chancellor will refuse to enjoin when greater injury will result from granting than from refusing an injunction has no application where the act complained of is in itself, as well as in its incidents, tortious. In such case it cannot be said that injury would result from an injunction, for no man can be heard to say that he is injured by being prevented from doing to the hurt of another that which he has no right to do. When a suitor has brought his cause clearly within the rules of equity jurisprudence, the relief he asks is demandable *ex debito justitiae*, and needs not to be implored *ex gratia*. There can be no balancing of conveniences when such balancing involves the preservation of an established right which will be extinguished if relief be not granted against one who would destroy it— yea, though the right be but that of a peasant to but a part of his small tenement. (*Walters* v. *McElroy*, 151 Pa. 549, [25 Atl. 125]; *Evans* v. *Fertilizing Co.*, 160 Pa. 209, [28 Atl. 702]; *Sullivan* v. *Jones & L. Steel Co.*, 208 Pa. 540, [66 L. R. A. 712, 57 Atl. 1065]; *Higgins* v. *Flemington Water Co.*, 36 N. J. Eq. 538; *Bristol* v. *Palmer*, 83 Vt. 54, [31 L. R. A. (N. S.) 887, and extended note, 74 Atl. 331]; *Woodruff* v. *North Bloomfield Gravel Min. Co.*, 9 Sawy. 542, [18 Fed. 753]; *Weimer* v. *Lowery*, 11 Cal. 104; *Gregory* v. *Nelson*, 41 Cal. 278; *Learned* v. *Castle*, 78 Cal. 454, [21 Pac. 11]; *Moore* v. *Clear Lake W. Works*, 68 Cal. 146, [8 Pac. 816]; *Heilbron* v. *Canal Co.*, 75

Cal. 426, [7 Am. St. Rep. 183, 17 Pac. 535]; *Allen v. San Jose L. & W. Co., supra; Allen v. Stowell,* 145 Cal. 666, [104 Am. St. Rep. 80, 68 L. R. A. 223, 79 Pac. 371]; *Vestal v. Young, supra.*)

[16]  The obvious distinction between *injury* and *damage* —a distinction not always observed when dealing with the question before us—is emphasized by Mr. Wood, who, speaking of a man's right of dominion over his property and the jealous care with which the courts have ever guarded this sacred right, says: "Whatever invades this right is a *legal* injury, whether damages ensue or not." (Wood on Nuisances, sec. 783. See, also, secs. 376, 782.) As is said in *Learned* v. *Castle, supra,* speaking of an injury to another's land that is a nuisance *per se:* "It is an injury to the *right,* and it cannot be continued because other persons (whether jurors or not) might have a low estimate of the damage which it causes. And especially is this so when the continuance of the wrongful act might ripen into a right in the nature of an easement or servitude. . . . The right to an injunction, therefore, in such a case does not depend upon the extent of the damage measured by a money standard—the maxim, *De minimis,* etc., does not apply." Though dissenting from the majority decision in *Sullivan* v. *Jones & L. Steel Co., supra,* Justice Mitchell was constrained to say that "where a clear legal right is being infringed, I agree that the remedy in equity is as mandatory as in law."

Respondents have cited a number of cases where equitable relief was refused on the ground that the injury was merely theoretical and the damage small. In so far as these were cases where injunctive relief was refused, it will be found on examination either that the injunction that was refused was an injunction *pendente lite*—as was the case in *McGregor* v. *Silver King Min. Co.,* 14 Utah, 47, [60 Am. St. Rep. 883, 45 Pac. 1091]—or that the injunction was refused because there was no injury, the land having no value whatever—as was the case in *Crescent Min. Co.* v. *Silver King Min. Co.,* 17 Utah, 444, [70 Am. St. Rep. 810, 54 Pac. 244], a decision by a divided court. [17] That the doctrine of the balance of convenience, so frequently determinative of the propriety of granting or denying a *preliminary* injunction, has no application to final decrees after hearing on plenary proofs, is

firmly established in this and other states. (*Richards* v. *Dower*, 64 Cal. 62, [28 Pac. 113] ; note to *Bristol* v. *Palmer*, *supra*, 31 L. R. A. (N. S.) 882.) That an injunction may be refused where the property invaded is absolutely valueless is conceded. In such case there can be no real injury whatever. If the invaded property has no value, then, obviously, there can be nothing more than a mere theoretical injury, as was the case in *Jacob* v. *Day*, 111 Cal. 571, [44 Pac. 243]—one. of the cases cited by respondents. Here appellant's property, wrongfully invaded by respondents, has some value, even though small, and his claim to damages at law is indisputable, even though, measured in dollars, the amount appears insignificant compared with respondents' investment. We know of no principle of law or power in a court of equity to justify or authorize an invasion of the property rights of one private party to serve the convenience or necessities of another private party. Such a principle, if once adopted by judicial tribunals, upon grounds of necessity, would, in its practical operation, result in a system of judicial condemnation of the property of one citizen to answer an assumed necessity or convenience of another citizen, and the sacred right of private property, so jealously guarded by courts in all English-speaking countries, would become but a shadowy unsubstantiality.

[18] If it was error to deny appellant a final decree granting him injunctive relief, what shall be said of a judgment that actually adjudges respondents to be the owners of an easement in that part of appellant's land upon which, as trespassers, they have wrongfully built a portion of their reconstructed ditch? Not only does the decree do this—it goes to the length of enjoining appellant from even asserting any right adverse to such easement. This is tantamount to an injunction enjoining appellant from ever bringing an action at law for the trespass, or from suing to recover the damage, however small, caused to his land by respondents' unauthorized invasion of his property. Such a judgment is clearly erroneous. The same error likewise inheres in and vitiates the findings. For this reason a new trial is unavoidable.

[19] 2. Appellant complains of that part of the decree which adjudges respondents to be the owners of all the surface waters of the creek up to sixty inches—the capacity of

their ditch—and himself the owner of but two and three-fifths inches.

Adopting the testimony of those witnesses who testified that the duty of water on lands such as appellant's is one inch to five acres, and finding that appellant owns thirteen acres of arable riparian land, the court found and adjudged him to be entitled to use thereon two and three-fifths inches for irrigation and domestic purposes. In so finding and adjudging the court seems to have ignored entirely appellant's indubitable right, as a riparian proprietor, to have the stream flow through his land undeteriorated in quality and undiminished in quantity, save as respondents, as appropriators or adverse users, have acquired a superior right to take a definite quantity of water from the stream before it passes from appellant's land.

Since appellant is a riparian owner, the decree should not have attempted to limit his water right to the right to divert a fixed quantity—two and three-fifths inches—for irrigation and domestic uses. The right of a riparian proprietor in or to the waters of a stream flowing through or along his land is not the right of ownership in or to those waters, but is a usufructuary right—a right, among others, to make a reasonable use of a reasonable quantity for irrigation, returning the surplus to the natural channel, that it may flow on in the accustomed mode to lands below. Use does not create the right; disuse cannot destroy or suspend it. If his needs do not prompt him to make any use of the waters, he still has the right to have them flow on to, and along, and over his land in their usual way, excepting as the accustomed flow may be changed by the act of God, or as the amount of it may be decreased by the reasonable use of other riparian proprietors or prior appropriators, if any there be. (*Hargrave* v. *Cook,* 108 Cal. 72, [30 L. R. A. 390, 41 Pac. 18].) The vice of the decree is that it limits appellant's right to such an amount as he may use for irrigation and domestic purposes upon his thirteen acres of arable riparian lands. He owned 137½ acres, all of which was riparian to the stream and included the thirteen acres of irrigable arable land. As between himself and respondents, appellant's right to the waters of the stream has no limitation, save as it is limited by the superior right of respondents as the owners of an appropriator's or adverse user's right. So limited, appellant's right to take water from the stream—as against respondents'—might be more or less than

two and three-fifths inches.    Instead of fixing a definite quantity that appellant may take from the stream, and decreeing that his interest in the stream is confined to the right to divert such fixed quantity for irrigation and domestic uses, the court should have determined the amount that respondents are entitled to divert, and should have decreed that appellant has all the rights of a riparian proprietor, limited only by respondents' superior right to take from the stream a quantity ascertained and fixed by the court.    True, the court did undertake to fix the quantity that respondents have the right to take from the stream, but in so doing proceeded upon an erroneous theory; and the finding that respondents are the owners of the waters of Hopper Creek to the extent of sixty inches is not supported by the evidence.

[20]  Respondents contend that, because the evidence showed the capacity of their ditch to be sixty inches, the court was justified in inferring that sixty inches was the amount reasonably necessary for the beneficial uses to which they applied the water.    That, in fixing the extent of respondents' right, the court proceeded upon the theory that the capacity of respondents' ditch measures their right to the water of the stream, regardless of whether that amount be greater or less than the amount reasonably necessary for their beneficial uses, is clearly apparent from a consideration of the whole record. In adopting the theory that the capacity of their ditch measures respondents' right to the water of the stream, the court indubitably erred.    The extent of an appropriator's or adverse user's right is limited, not by the quantity of water actually diverted, nor by the capacity of his ditch, but by the quantity which is, or may be, applied by him to his beneficial uses. (*Barrows* v. *Fox*, 98 Cal. 63, [32 Pac. 811] ; *Smith* v. *Hawkins,* 120 Cal. 86, [52 Pac. 139].)    An appropriator's right is limited to such quantity, not exceeding the capacity of his ditch, as he may put to a useful purpose upon his land within a reasonable time, by use of reasonable diligence.    (*Senior* v. *Anderson,* 115 Cal. 496, [47 Pac. 454].)    A diversion over and above what is reasonably necessary for the uses to which he devotes the water cannot be regarded as a diversion for a beneficial use.    He cannot waste.    If there is any surplus over and above the water reasonably necessary for his beneficial use, the riparian proprietor below his point of diversion has the

right to demand that it flow in the stream as it has been accustomed to flow.

[21] Respondents' suggestion that, because the evidence shows the capacity of their ditch to be sixty inches, and that they always used the ditch capacity, the court could infer therefrom that sixty inches is reasonably necessary for their beneficial uses, does not impress us as having any force in the face of certain indisputable facts. It may be that, in the absence of any direct evidence to the contrary, a court would be justified in presuming that an appropriator takes no more than his reasonable uses necessitate. But here we have direct evidence, furnished by respondents themselves, that sixty inches greatly exceeds the amount reasonably necessary for their beneficial uses. Thus, Walter Warring, one of the respondents, testified that thirty inches, constant flow, would be sufficient to irrigate respondents' lands together with a piece belonging to one Pedleford. Respondents endeavor to make a point of the fact that this witness used the expression "constant flow," when saying thirty inches would suffice. But the sixty inches awarded to respondents by the decree means sixty inches "constant flow," or else the decree is fatally uncertain.

As indicating that the court seems to have tried the case upon the theory that the capacity of the ditch measures respondents' right, regardless of whether it carried more than was reasonably necessary for their beneficial uses, are the following facts, shown by the record: In the early stages of the trial, in reply to a statement by the court, counsel for respondents said: "We claim we are not confined to the necessity"—that is, the amount necessary for respondents' beneficial uses— "we claim we have a right to use as much as we have been using"; and when, later on in the trial, counsel for respondents asked one of their witnesses how much water, during the irrigation season, respondents took out of the stream, and counsel for appellant objected on the ground that counsel should ask, "How much was reasonably necessary for them to take?" the court instead of sustaining, overruled the objection. It was a proper objection, and should have been sustained. This ruling of the court, coupled with its failure to limit the quantity decreed to respondents to the amount which they themselves testified would suffice for their reasonable needs, convinces us that the court adopted respondents' theory that the capacity of their ditch measured the quantity of water

they were entitled to take, without regard to any waste on their part.

[22] We are fully aware that an appellate court will not reverse a finding if there is a substantial conflict in the evidence; but the evidence, in order to raise a conflict, must be such as to present a fair and reasonable ground for a difference of opinion. And where, as here, it is clearly apparent that the court's finding that respondents are entitled to sixty inches of water is based upon the erroneous theory that the extent of their right is measured by the capacity of their ditch, and that amount of water has been decreed to them in spite of the testimony of one of themselves that less than half of that quantity would suffice for the reasonable needs of their lands, we have no hesitancy in holding that the finding is within the rule declared in *Field* v. *Shorb,* 99 Cal. 661, [34 Pac. 504] , *Smith* v. *Belshaw,* 89 Cal. 427, [26 Pac. 834] , and *In re Coburn,* 11 Cal. App. 604; [105 Pac. 924].

The attempted appeal from the order denying appellant's motion for a new trial was taken after section 963 of the Code of Civil Procedure was amended in 1915, [Stats. 1915, p. 209]. The appeal from that order, therefore, is dismissed.

The judgment is reversed.

Sloane, J., and Thomas, J., concurred.