[L. A. No. 434.    Department One.—August 13, 1898.]

## NORTH FORK WATER COMPANY, Appellant, v. J. S. ED-WARDS et al., Respondents.

EASEMENT—PRESCRIPTION—DITCH—WRONGFUL DISCHARGE OF STORM WATER.—An easement acquired by prescription in a ditch carrying water for domestic use, and so constructed by plaintiff along a hillside near the edge of defendants' land as to receive and carry away the storm water flowing in depressions down the hill, and to prevent its flow over the land of the defendants, who, relying upon the continuance of the prevention of such flow, had graded their land, filled up the depressions, and planted trees thereon, does not include the right of the plaintiff subsequently to construct aprons across the ditch at such depressions, so as to discharge the storm water across the ditch to the injury of the defendants.

ID.—LIMITATION OF EASEMENT—RIGHTS OF SERVIENT ESTATE—CONTINUOUS DIVERSION OF WATER.—The acquired easement upon the servient estate of the defendants was limited to the right of the plaintiff to maintain the ditch so as to close the depressions receiving the storm water, and to convey it away from the land of the defendants, who had the right to treat their lands as though no depressions or drainage channels had ever existed, and to assume that plaintiff would continue the use of the ditch in the same manner in which it was used in acquiring the right.

ID.—NECESSITY FOR DISCHARGE OF WATER—POLLUTION FROM CULTIVATION OF LANDS.—An apparent necessity for the use of aprons across the ditch to discharge the storm water, in nowise connected with the origin of the easement for the ditch, but arising from increased pollution of the storm water, owing to subsequent rightful cultivation of lands above the ditch, thereby interfering with the water carried for domestic use, cannot justify its discharge upon the servient lands of the defendants, as against whom the carrying away of the storm water entered into the user by which the prescriptive right to the easement was acquired. Such necessity is a condition which should have been provided for in the acquisition of the .easement.

ID.—SECONDARY EASEMENTS—LIMITATION OF NECESSITY.—Every easément includes "secondary easements," consisting of the right to do such things as are necessary for the full enjoyment of the easement; but this right is limited, and must be exercised in such reasonable

manner as not to increase injuriously the burden upon the servient tenement.

Id.—Enlargement of Burden—Trespass.—The burden of the dominant tenement cannot be enlarged to the manifest injury of the servient estate by any alteration in the mode of enjoying the former; nor can the owner thereof commit a trespass upon the servient tenement beyond the limits fixed by the grantor.

Id.—Prescription Limited by User.—Rights acquired by prescription are *stricti juris,* and cannot extend beyond the user; and the extent of an easement so acquired is fixed and determined by the user under which it was gained.

Id.—Repair of Ditch—Construction of Aprons—Change of Mode of Enjoyment.—The right to make repairs is incident to an easement for a ditch, and would be implied, though the easement was acquired by prescription; but the construction of aprons for the discharge of storm water over a ditch is not in the nature of repairs, but constitutes a change in the mode of enjoyment, which might be made if not harmful to the servient tenement, but cannot be made to its material injury.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial.    John H. Campbell, Judge.

The facts are stated in the opinion.

Otis, Gregg & Hall, for Appellant.

C. C. Haskell, and Rolfe & Rolfe, for Respondents.

CHIPMAN, C.—Plaintiff is the owner of a ditch used to convey water to a large number of families and to the inmates of the Southern California Insane Asylum for domestic and other uses.    The course of the ditch at the point in question was along a hillside, and above the ditch the lands were uncultivated and not owned by defendants.    Below the ditch and extending to its center are defendants' lands.

Plaintiff acquired a right of way or easement over defendants' lands by prescription.    When the ditch was first dug it followed generally the contours of the land.    There were two depressions running down the hillside to defendants' lands.    A short flume carried the water of the ditch across one of these depressions originally; at the other the ditch was built on the ground. These depressions were slight, but formed drains for the land above the ditch and led into and some little distance over de-

fendants' land, where they spread out and disappeared as distinct channels. The ditch was reconstructed later—about eight years before the action was commenced—and was converted into an open cement and stone-walled ditch, and was built upon the ground at the depressions referred to, leaving no passageway for storm waters to pass beyond it. The flume mentioned was dispensed with; the ditch received the storm water and prevented it from flowing onto defendants' land; defendants thereupon graded and leveled their lands at considerable cost, filling up these depressions, and planted the lands to fruit trees up to within ten feet of the ditch. The easement acquired by plaintiff dates from the construction of this cemented ditch. Plaintiff never exercised or claimed the right to construct aprons at these points and pass the storm water over the ditch onto defendants' land until 1895, but up to that time always received this water in its ditch with such sand and other debris as it might carry. In the spring of 1895 the land above the ditch along these depressions owned by other persons was cleared and planted to fruit trees, and the cultivation of the soil caused additional sand and detritus to flow into the ditch, to the injury of plaintiff and the quality of the water, to avoid which two aprons were constructed in December, 1895, to carry the storm water over the ditch at these depressions and discharge it upon defendants' lands. It appeared that the water conveyed to consumers was injured in quality more than it had been hitherto, although it appeared that the water was always more or less muddy just after storms, and that at many places along the ditch plaintiff had diverted the surface waters at similar depressions into its ditch. The evidence was that defendants would be materially injured by the flow of storm waters across these aprons as constructed, and that the water would form new and different channels from the depressions formerly existing. One of these aprons was one hundred and ten feet wide and the other eighty feet wide, and the necessity for resorting to them grew out of the cultivation of the lands above the ditch, and not by any act of defendants. It was found by the court that the aprons "are in all respects a suitable and proper appliance for so conducting said storm and other waters for the protection of said ditch." It was also found that the consumers of water had no other adequate supply than by

means of this ditch.   It was not found, and did not appear, that plaintiff could not divert these storm waters in some way other than by the aprons.   Defendants constructed dams below these aprons to turn back the overflow and compel it to enter the ditch as before.   The action was to restrain defendants from maintaining these dams.   The only question discussed is, Has plaintiff the right to maintain the aprons?   It seems to be conceded that if plaintiff has no such right, then the dams are rightfully erected, and if it has such right they should be removed.

It seems to me that the right of way here, so far as defendants' servient estate is affected by it, must be regarded as a right only to build a ditch by closing the depressions as was done, and receiving the surface water formerly flowing down these depressions into the ditch, and conveying it by means of the ditch alone and away from defendants' land.   Defendants had a right to assume that plaintiff would continue to use the ditch in the manner it had used it in acquiring the right; and they had the right to grade their lands and fill up the depressions and plant trees upon the assumption that plaintiff would continue to provide for the surface storm waters.   The case stands precisely as though no depressions or drainage channels ever existed over defendants' lands.   If plaintiff had constructed aprons at the beginning of its use and had discharged the water as it is now proposed to do upon defendants' land, or had built culverts to carry the water under the ditch, the easement would clearly now include such right; but no such privilege was exercised or claimed. It may be that the acquiescence of defendants in the occupation by plaintiff was partly due to the benefit derived from damming these depressions and stopping the flow of water over defendants' land; and the court found upon sufficient evidence that defendants at great cost graded and planted their lands, "relying upon the surface water flowing above said ditch being collected therein, and thereby carried off and prevented from flowing on their said lands."

The necessity for these aprons is of recent origin, in nowise connected with the origin of the easement.   Until this necessity arose there was no occasion for using aprons at this point. Every easement includes what are termed "secondary easements"; that is, the right to do such things as are necessary for

the full enjoyment of the easement itself. But this right is limited, and must be exercised in such reasonable manner as not to injuriously increase the burden upon the servient tenement. The burden of the dominant tenement cannot be enlarged to the manifest injury of the servient estate by any alteration in the mode of enjoying the former. The owner cannot commit a trespass upon the servient tenement beyond the limits fixed by the grant or use.

Rights by prescription are *stricti juris*, and should not be extended beyond the user. Doubtless, the right to make repairs is incident to the right of way acquired by plaintiff, and would be implied even though it is a prescriptive right, but we do not think the building of these aprons can be said to come under the denomination of repairs; they were in the nature of changes in the mode of enjoyment, and while they might be made if not harmful to the servient estate, they cannot be made to its material injury. The necessity for them arises from the rightful use of the lands above the ditch. It is a condition which should have been provided for when the way was being acquired.

The character and extent of a way claimed by prescription are fixed and determined by the user under which it is gained. (Washburn on Easements, 135.) It was held in *Capers v. McKee*, 1 Strob. 164, that the owner by prescription of a private way over another's land has no right to cut ditches for the improvement of his way without the consent of the owner of the soil, unless he has acquired such right *also* by prescriptive use. And where a grant is presumed from the use, then the use must define the extent of what is presumed to have been granted. (Jones on Easements, secs. 818, 819.)

Appellant quotes from *Ware v. Walker*, 70 Cal. 591: "Where the use of a thing is granted, everything is granted essential to such use. Such a right carries with it an implied authority to do all that is necessary to secure the enjoyment of such easement." Gale and Whatley on Easements (Am. ed., 231, 232) is cited in support of this statement of the law. It is obvious that, as a rule of universal application, the quoted paragraph is too broadly stated, and the context shows that it was not intended to apply to all cases, but to the case then in hand, which

was the exercise of the right in a reasonable manner and without damage to defendant, namely, removing deposits in the bed of the stream which obstructed the flow of water to plaintiff's ditch.   Appellant cites *Burris v. People's Ditch Co.,* 104 Cal. 248; *Joseph v. Ager,* 108 Cal. 517; *Jacob v. Day,* 111 Cal. 571.

In the case in 104 California the right was upheld to clean out a ditch to make it uniform, and without increasing the flow of water and without damage to plaintiff's lands or increase of the burden upon them.   The case in 108 California by no means supports appellant's contention, but quite to the contrary. Quoting from Gale and Whatley on Easements, page 237, it was said: "As every easement is a restriction upon the right of property of the owner of the servient tenement, no alteration can be made in the mode of enjoyment by the owner of the dominant heritage, the effect of which will be to increase such restriction. Supposing no express grant exist, the right must be limited by the amount of enjoyment proved to have been had."   The rule was stated in *Jacob v. Day, supra,* to be that, while the owners of a ditch "have a right to operate their ditch, they have no right so to operate it as to render it a nuisance to or destructive of the servient tenement."

We discover no error in the rulings of the court at the trial, and as we think the judgment and order were correct, they should be affirmed.

Belcher, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.

Hearing in Bank denied.