[Civ. No. 4858. First Appellate District. Division One.—December 18, 1924.]

## PACIFIC GAS & ELECTRIC COMPANY (a Corporation), Respondent, v. CROCKETT LAND AND CATTLE COMPANY (a Corporation) et al., Appellants.

[1] ADVERSE POSSESSION—NOTICE TO OWNER.—In order to establish title to an interest in real property by adverse possession, the asserted hostile claim must be manifested to the true owner; and the owner will not be condemned to lose his land because he has failed to sue for its recovery where he has no notice that it is held or claimed adversely, but the statute cuts off his remedy only when he has neglected to commence his action within the period assigned for it.

[2] ID.—HOSTILE OCCUPANCY—INTENT — KNOWLEDGE. — Two elements must be present to support a claim of hostile occupancy, i. e., hostile intent in the mind of the adverse claimant, coupled with knowledge on the part of the owner; and it is not sufficient that the claim of right exist only in the mind of the person asserting it, but it must be manifested in such manner that the owner has knowledge thereof.

[3] ID.—LEGAL TITLE—PRESUMPTION OF POSSESSION—ADVERSE OCCUPANCY—BURDEN OF PROOF.—In an action for the recovery of real property or the possession thereof, the person establishing a legal title is presumed to have been possessed thereof within the time required by law; and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appears that the property has been held and possessed adversely to such legal owner for five years before the commencement of the action; and the burden of proof is upon the person in possession claiming title against the holder of the legal title to show that his occupancy is hostile and not subordinate to the legal title.

[4] ID. — USER UNDER CLAIM OF RIGHT — CONFLICTING EVIDENCE — FINDINGS—APPEAL.—In such an action, the question as to whether the use was under claim of right is one for the court or jury to determine as a fact in the light of the relations between the

---

1. See 1 Cal. Jur. 549.

2. Essentials of adverse possession, notes, 28 Am. St. Rep. 158; 88 Am. St. Rep. 701.

Hostility as essential element in adverse possession, note, 15 L. R. A. (N. S.) 1192.

3. See 1 R. C. L. 705; 1 Cal. Jur. 636.

parties and the surrounding circumstances, and where there is a conflict upon this subject the findings will not be disturbed on appeal.

[5] ID.—RIGHT OF WAY BY PRESCRIPTION—USER—KNOWLEDGE—PRESUMPTION—EVIDENCE.—A right of way by prescription may be established by use with knowledge on the part of the owner whose land is used that the person using the same claims a right to use it, or by a use so open and notorious that knowledge of a claim of right will be presumed; and evidence in negation of either or both of these ways is competent, and evidence disproving actual knowledge of any claim of right compels the claimant to rely on a use of the land so visible, open, and notorious that the law will presume a knowledge of the claim to use it as a matter of right.

[6] ID.—OCCUPANCY—INITIATION—EVIDENCE—PRESUMPTION OF GRANT. Occupancy may be initiated through a trespass, under a license, or by a grant; and where there is no evidence to enlighten a court or jury under which manner the original entry was made the court may indulge the presumption of a grant.

[7] ID.—PRESCRIPTIVE TITLE—BURDEN OF PROOF—LOST GRANT—PRESUMPTION.—In order to establish a prescriptive title the claimant must show every element to constitute a title, but in the absence of direct evidence as to the nature of the entry, long continued, peaceable possession of land accompanied by the usual acts of ownership justifies the presumption that the adverse holding is under a communicated claim of right based upon a lost grant to the claimant of the property, and this presumption supplies the place of positive proof of an ancient grant.

[8] ID.—ADVERSE USER UNDER CLAIM OF RIGHT—PRESUMPTION—REBUTTAL.—Where an open and uninterrupted use of an easement for a sufficient length of time to create the presumption of a grant is shown, the law will presume the elements of hostile intent and that the use is adverse and under a claim of right, and if the other party relies upon the fact that these acts were permissive or in the nature of a license, or merely given as a matter of accommodation, it is incumbent upon him to rebut the presumption of a nonappearing grant, otherwise the presumption stands as sufficient proof and establishes the right.

[9] ID.—EASEMENT FOR POLE LINE—TERRITORIAL DESCRIPTION—JUDGMENT.—In an action to quiet title to an alleged easement con-

---

5.  Continuity and requisites of adverse possession, note, 13 Am. Dec. 185.  See, also, 9 R. C. L. 779; 1 Cal. Jur. 550, 608.

6.  See 1 Cal. Jur. 576.

7.  See 9 R. C. L. 771.

8.  Permissive use of easement as adverse possession, note, 1 A. L. R. 890.  See, also, 9 R. C. L. 781-784; 1 Cal. Jur. 637.

sisting of a certain right of way for a pole line, and to restrain defendants from interfering with its use, where the judgment describes the land which is subjected to the servitude as being the most westerly specified number of acres of the northerly portion of a designated tract, and further fixes the transmission line as being of a certain width on and across said tract, the center line thereof commencing at a certain designated pole (the location of which is definitely described and established), and carries it by courses and distances across the entire tract, the territorial description of the easement is sufficiently definite and certain.

[10] ID. — PRESCRIPTIVE RIGHTS — EXTENT OF USER—IMPROVEMENTS. Rights acquired by prescription are *stricti juris* and cannot extend beyond the user, and the extent of an easement so acquired is fixed and determined by the user under which it is gained; but so long as the use of the easement is confined to the purposes under which it was acquired and created without increasing the burden upon the servient estate, it inflicts no injury upon the owner thereof, and within these limits the owner of the easement may make improvements or changes that do not impair or affect its substance.

[11] ID. — INCIDENTAL RIGHTS — REPAIRS AND REPLACEMENTS. — Every easement includes what are termed "secondary easements," that is, the right to do such things as are necessary for the full enjoyment of the easement itself; and repairs and replacements which cause no greater burden are permitted to be made.

[12] ID. — RIGHT OF WAY FOR POLE LINE — JUDGMENT — CHANGE OF MATERIALS—ADDITIONAL SERVITUDE.—In an action by an electric power company to quiet title to an alleged easement consisting of a certain right of way for a pole line, it would be impossible in the judgment to describe and limit the exact kind and character of the materials that might be used by the power company when it is called upon to repair or reconstruct its lines; and any question which might arise by reason of such repairs or reconstruction as to whether a change was justified under the use, or whether it created an additional servitude beyond that originally imposed, must be determined in an appropriate proceeding.

[13] ID. — QUIETING TITLE — DEFINITE RIGHT OF WAY — EVIDENCE — JUDGMENT.—The character and extent of the right of way claimed by prescription are fixed, and they are determined by the user under which the right was gained; and in an action to quiet title to a right of way, the court has jurisdiction to set aside a definite right of way, where the evidence shows that the case-

10.   See 9 R. C. L. 788.
12.   See 9 R. C. L. 796; 9 Cal. Jur. 950.
13.   See 9 Cal. Jur. 952.

ment acquired extended through the area delimited and set apart and to which the claimant of the easement is confined in the use thereof.

---

(1) 2 C. J., p. 75, n. 60, p. 76, n. 66.    (2) 2 C. J., p. 75, n. 60, p. 127, n. 62, 63, p. 128, n. 74, p. 263, n. 75.    (3) 2 C. J., p. 263, n. 75, p. 264, n. 84, 86, p. 266, n. 1.    (4) 2 C. J., p. 282, n. 81; 4 C. J., p. 858, n. 3, p. 883, n. 33.    (5) 19 C. J., p. 880, n. 60, 69; p. 959, n. 42.    (6) 19 C. J., p. 874, n. 81.    (7) 19 C. J., p. 958, n. 40, p. 959, n. 41, 43, 44, 45, 46, 51.    (8) 4 C. J., p. 879, n. 84; 19 C. J., p. 959, n. 51, p. 960, n. 54, 57, p. 964, n. 36, 39.    (10) 19 C. J., p. 973, n. 72, p. 1004, n. 60 New.    (11) 19 C. J., p. 977, n. 31, 33, p. 982, n. 13.    (12) 19 C. J., p. 967, n. 80, p. 970, n. 26, p. 981, n. 99, p. 982, n. 4.    (13) 19 C. J., p. 1004, n. 60 New.    (14) 19 C. J., p. 991, n. 34.

APPEAL from a judgment of the Superior Court of Contra Costa County. R. H. Latimer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Courtney L. Moore for Appellants.

Thos. J. Straub, L. H. Susman and M. R. Jones for Respondent.

TYLER, P. J.—Action to quiet title to an alleged easement consisting of a certain right of way for a pole line and to restrain defendants from interfering with its use.

Plaintiff is a public utility corporation, and it claims that it and its predecessors in estate have owned and actually possessed and used the electric transmission line in question across the premises of defendant corporation since about the year 1901. The interests claimed in the amended complaint are the right to the easement of the pole line, which is described by surveyor's angles and distances; the right to repair; a right of way of ingress and egress thirty feet wide along the line of the poles, and the right to an easement for the overhang along the boundary line.

The evidence discloses that the pole line so situated on the defendants' property consists of twenty-six poles, each pole being approximately twenty-nine feet in height above the ground, with a vertical pipe extension affixed to the top thereof five feet in length. On each of these poles there are three cross-arms. The lower one carries telephone wires used

by the plaintiff company for its own private purposes; the next supports three strands of wire through which 11,000 volts of electricity pass; and the upper cross-arms, together with the pipe extension, have attached thereto three strands of wire carrying 60,000 volts.

The transmission line was originally constructed during the years 1900 and 1903 by the Bay Counties Power Company, plaintiff's predecessor in interest. As originally constructed the line carried 11,000 volts of electricity. In the year 1906 the line was reconstructed and the 60,000-volt circuit was installed. Title to the line in question passed by grant and delivery of possession in October, 1907, from the Bay Counties Power Co. to the California Gas & Electric Co., which latter company subsequently and two years later executed a conveyance of all its property to the present plaintiff. The two transmission lines installed on the premises of defendant as above described have always been operated and used for supplying electricity for public use in the towns of Crockett, Selby, Richmond, and adjacent territory. From the time of its installation the line has been in continuous service and has been maintained by plaintiff and its predecessors, who have kept it in proper operation and repair, and in so doing they have maintained regular patrolmen in order that proper service over the same might be had. Necessary repairs were always made openly and in the daytime. No objection of any kind was ever made by anyone to the maintenance of the transmission lines or to their repair and upkeep until along about the year 1914 or 1915, when one Thomas R. Hanna, president of the defendant company and the husband of one of the owners of the land, made certain inquiries through officers of plaintiff corporation concerning its rights or interest in the easement in question and the status of the pole line; and later along about the year 1915 or 1916 he ordered the poles removed. Plaintiff company refused to comply with this demand. The following year Hanna also objected to certain repairs being made. Before making the inquiry concerning plaintiff's rights in the premises or registering his objection to the presence of the pole lines, Hanna had examined the record of the county and had been unable to discover any record establishing plaintiff's rights. His testimony shows, however that defendants' predecessors in interest knew of the original construction of the transmission line and its en-

largement in 1906, for he testified that his mother-in-law, a Mrs. L. S. Muir, who was the owner of the land during those periods, maintained an agent upon the premises to whom the tenants regularly paid their rents. Other evidence shows that plaintiff and its predecessors in interest in the pole line and easements in question were the owners thereof, having been in actual, open, visible, continuous, and uninterrupted possession and use of the same since about the year 1901 and up to the very time of the commencement of the action. An attempt was made by plaintiff to show that its predecessor in interest, the Bay Counties Power Company, secured a grant from the owner of the land to the easements in question. Mr. P. M. Downing, in charge of the electrical construction of plaintiff company and who formerly was associated with the Bay Counties Power Company, testified that it was the policy of that company to always secure the consent of the owner to go upon the land and that it never trespassed upon other people's property. He further testified that many of the written documents giving that company rights on lands were lost during the fire in San Francisco in 1906 before they were ever recorded; that during the early days of the company's existence it was not customary to record all deeds and documents, and that its policy was not changed until the year 1905 or 1906, and that a large number of grants of rights of way were in the office of the attorney of the company unrecorded at the time of the fire and were destroyed.

In accordance with this evidence the trial court found plaintiff to be the owner and in the actual possession, use, and enjoyment of the claimed easements, and a judgment accordingly went in plaintiff's favor quieting its title to the easement in the pole line and the overhang, and it also allowed plaintiff an easement of ingress and egress of fifteen feet in width along the line of the poles, and enjoined any interference with its proper use and possession.

In support of this appeal it is first claimed by appellants that there is no evidence to support the finding that respondent company ever claimed an easement or occupied the land of appellants with hostile intent; and, second, that there is no evidence which in any way sustains the implied finding that appellants at any time had any knowledge of any claimed hostile intent in the mind of the respondent company. In other words, it is appellants' contention that the

judgment is premised upon the sole theory that adverse possession is established by proof of mere occupancy for a period in excess of five years unattended by any color of title or claim of right.

[1] It is, of course, elementary that in cases of this character the asserted hostile claim must be manifested to the true owner. The owner must be informed in some way that the possession is hostile, or the statute does not operate against his right. The object of the statute in defining the acts essential to constitute an adverse possession is that the real owner may by unequivocal acts of the disseisor have notice of the adverse holding, and be thereby called upon to assert his legal title (*Unger* v. *Mooney,* 63 Cal. 586 [49 Am. Rep. 100]). The owner will not be condemned to lose his land because he has failed to sue for its recovery where he has no notice that it is held or claimed adversely, but the statute cuts off his remedy only when he has neglected to commence his action within the period assigned for it (*Thompson* v. *Pioche,* 44 Cal. 508). [2] Hostile occupancy consists of two elements: First, hostile intent in the mind of the adverse claimant, coupled with, second, knowledge on the part of the owner. These two elements must be present to support a claim of hostile occupancy. It is, therefore, not sufficient that the claim of right exist only in the mind of the person asserting it. It must be manifested in such manner that the owner has knowledge thereof (*Thomas* v. *England,* 71 Cal. 456 [12 Pac. 491]). Neither a hostile intent without occupation nor occupation without hostile intent is sufficient. The burden of proving the hostile claim is of course upon the party in possession claiming against the holder of the legal title. [3] In an action for the recovery of real property or the possession thereof the person establishing a legal title is presumed to have been possessed thereof within the time required by law; and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title unless it appears that the property has been held and possessed adversely to such legal owner for five years before the commencement of the action; and the burden of proof is upon the person in possession claiming against the holder of the legal title to show that his occupancy is hostile and not subordinate to the legal title (*Janke* v. *McMahon,* 21 Cal. App. 781 [133 Pac. 21]).

Here the court found in effect that plaintiff's possession

70 Cal. App.—19

and use were hostile and under a claim of right communi-
cated to the owner of the land covered by the pole line and
easement. [4] The question as to whether the use was
under claim of right is one for the court or jury to de-
termine as a fact in the light of the relations between the
parties and the surrounding circumstances, and where there
is a conflict upon this subject the findings will of course not
be disturbed here (*Wells* v. *Diaz,* 57 Cal. App. 670 [207
Pac. 913]).

The contention of appellants that there is no evidence of
hostile occupancy is predicated upon their claim that in no
case is the hostile state of mind of the hostile claimant ever
presumed, but independent evidence must always be offered
competent to prove this state of mind, and that proof of
mere occupancy alone has no probative relevancy to this
issue. [5] But a right of way by prescription may be es-
tablished in either of two ways: First, by use with knowl-
edge on the part of the owner whose land is used that the
person using the same claims a right to so use it; second,
by a use so open and notorious that knowledge of a claim of
right will be presumed. Evidence in negation of either or
both of these ways is competent. Evidence disproving an
actual knowledge of any claim of right compels the claimant
to rely on the use of the land so visible, open and notorious
that the law will presume a knowledge of the claim to use it
as a matter of right.

[6] There are three ways in which occupancy may be
initiated, namely, through a trespass, under a license, or by
a grant. Where there is no evidence to enlighten a court
or jury under which manner the original entry was made
the court may indulge the presumption of a grant. [7] It
is of course a rule of elementary application that in order
to establish a prescriptive title the claimant must show every
element to constitute a title. Thus he must prove that the
possession was actual, open, and notorious, continuous for
the full time required by the statute, exclusive, hostile, and
under a claim of right. It is also an elementary rule, how-
ever, that in the absence of direct evidence as to the nature
of the entry, long-continued, peaceable possession of land
accompanied by the usual acts of ownership justifies the pre-
sumption that the adverse holding is under a communicated
claim of right based upon a lost grant to the claimant of the
property. This presumption supplies the place of positive

proof of an ancient grant. Presumptions of this character are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and public policy in supporting long and uninterrupted possession. They are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur unless there was a presumptive title to or admission of an existing adverse title in the party in possession. [8] Accordingly, it has been held in this state that where an open and uninterrupted use of an easement for a sufficient length of time to create the presumption of a grant is shown the law will presume the elements of hostile intent and that the use is adverse and under a claim of right (*Franz* v. *Mendonca,* 131 Cal. 205 [63 Pac. 361]; *Fleming* v. *Howard,* 150 Cal. 28 [87 Pac. 908]; *Clark* v. *Clark,* 133 Cal. 667 [66 Pac. 10]). If the other party relies upon the fact that these acts were permissive or in the nature of a license, or merely given as a matter of accommodation, it is incumbent upon him to rebut the presumption of a nonappearing grant. Otherwise the presumption stands as sufficient proof and establishes the right (*Yuba Cons. Goldfield* v. *Hilton,* 16 Cal. App. 228 [116 Pac. 712, 715]; *Costello* v. *Sharp,* 65 Cal. App. 152 [223 Pac. 567]; *Ricoli* v. *Lynch,* 65 Cal. App. 53 [223 Pac. 88]). If there is any evidence which throws any light upon the question as to whether the occupancy was under a license or a claim of right it presents a question of fact, and a finding thereon is here conclusive (*Wells* v. *Dias, supra; Ricoli* v. *Lynch, supra*).

Here the trial court expressly found that plaintiff's occupancy was adverse and under a communicated claim of right to the owner of the legal title. It is immaterial whether such finding is based upon the evidence of Downing relating to the lost grant, or is reached by indulging the presumption that one was executed, for in either case it constitutes evidence upon the subject; and not being repelled, is sufficient to support the finding and conclusion here (*Alper* v. *Tormey,* 7 Cal. App. 8 [93 Pac. 402]).

We are cited by appellants to California cases which they claim are in conflict with these views and which support their contention that direct proof upon the subject is requisite. We do not deem an analysis of these cases necessary. They are cases in the main presenting the situation where the facts and circumstances surrounding the entry

disprove and dispel the theory of a grant. Whatever may be said of the language employed in some of them, there can be no question that the rule is firmly established in this state that the presumption that the use was under a claim of right and adverse arises from an undisputed enjoyment of an easement for the established period of prescription; and the burden is upon the party alleging that the use has been by virtue of a license or permissiton to prove that fact by affimative evidence, and defendants have not met this burden.

In connection with this subject it is urged by respondents in support of the judgment that its title to the pole line and easements claimed is established under the evidence by the doctrine of occupancy for public use as laid down in the case of *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 669 [36 L. R. A. (N. S.) 185, 117 Pac. 906]. The conclusion we have reached upon the subject relative to plaintiff's rights in the claimed easement renders unnccessary a discussion of this question.

[9] Appellants further contend that even conceding the evidence shows that respondent did acquire a prescriptive title, the judgment fails to contain an exact description of the adjudicated easements or the territorial location of the pole line. This seems to be its main contention, as the objection is described as the basic cause of this appeal and the principal reason why appellants are dissatisfied with the judgment.

The easement is described in the findings and judgment as follows: "The right to repair, maintain, reconstruct, use, and operate for the transmission of electricity and for its own private telephone purposes, in connection therewith, an electric transmission line consisting of one line of poles with wires, cross-arms, braces, guys, insulators, pins and fixtures installed thereon, constructed and erected upon, over and across the following described tract of land situated in the county of Contra Costa, State of California, to-wit: The most westerly 1571.79 acres of the northerly portion of Rancho Canada del Hambra y las Bolsas, more particularly described in the deed of partition of Raye, Piper and Crockett, recorded in vol. 14 of Deeds at page 171, in the office of the County Recorder of Contra Costa, said land being bounded on the north by Carquinez strait and the Town of Volona, on the east by the lands of the California Hawaiian Sugar Refining Company, on the south by the lands of B.

Fernandez, and on the west by the lands of Tormey; together with a right of way along the same fifteen feet in width lying equally on each side of the hereinafter described center line, for all purposes connected with the proper repair, maintenance, reconstruction, patrolling, use and operation thereof for the purposes hereinbefore specified, and also the right of ingress thereto and egress therefrom along, on and within said fifteen feet right of way. Said electric transmission line has at all times herein mentioned been maintained and operated for the purposes aforesaid by plaintiff in the same location as that in which the same is now being maintained and operated.''

''Said transmission line is located on and across said tract of land, and the center line thereof is more particularly described as follows, to-wit: Commencing at pole bearing No. 1/6 of said transmission line which is north 73 degrees 25 minutes west 78 feet from the intersection of the center line of Flora street with the center line of Fifth Avenue in the Town of Valone, said county and state, and runs thence west 471.5 feet to pole bearing No. 1/9 of said transmission line; thence north 69 degrees 24 minutes west 1850.9 feet; thence north 67 degrees 09 minutes west 380.7 feet; thence north 71 degrees 19 minutes west 211 feet; thence north 50 degrees 26 minutes west 1577.9 feet; thence north 70 degrees 44 minutes west 177.8 feet; thence north 88 degrees 24 minutes west 86.5 feet to the fence marking the northwesterly boundary line of said tract of land. . . . Said plaintiff also owns the right to maintain, repair and use existing guys on poles 1/9, 1/18, 1/22, 1/31 and 1/32.''

The objection, in so far as it concerns the territorial description, is that there is nothing to show where the pole line enters the property line of defendant or where it leaves the same. There is no merit in this objection. There can be no question but that an easement consisting of a right of way must contain a description of the land which is to be subjected to the servitude with sufficient clearness to locate it. While here the land is described as the most westerly 1571.79 acres of the northerly portion of the tract, the judgment further fixes the transmission line as being on and across said tract of land the center line thereof commencing at a pole, bearing the mark 1/6, of said line, which is 73 degrees 25 minutes west 78 feet from the intersection of the center line of Flora Street with the center line of Fifth Avenue, two intersecting streets in the town of Valona adjoining

appellants' land, and carries it by courses and distances across the entire tract. In addition thereto, as pointed out by respondent, the pole line itself is an established monument upon the ground which locates itself (*Hamaker* v. *Pacific Gas & Electric Co.,* 59 Cal. App. 642 [211 Pac. 266]); and the easement is 15 feet in width lying equally on each side thereof—which is equally definite; and its use is restricted to this territorial limit. It would be difficult indeed to imagine how the territorial description could be more certain and definite.

Equally untenable is the objection that the judgment is indefinite for failing to designate the character of the materials to be employed in the use and enjoyment of the easement or the extent of the servitude. [10] It is true that rights acquired by prescription are *stricti juris* and cannot extend beyond the user; and the extent of an easement so acquired is fixed and determined by the user under which it is gained (*North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 Pac. 69]); but so long as the use of the easement is confined to the purposes under which it was acquired and created without increasing the burden upon the servient estate, it inflicts no injury upon the owner thereof, and within these limits the owner of the easement may make improvements or changes that do not impair or affect its substance (*Burris* v. *People's Ditch Co.,* 104 Cal. 252 [37 Pac. 922]; 9 R. C. L. 784; 19 C. J. 983). This is not only a right, but in many cases it becomes a positive duty, and public service corporations should be encouraged rather than embarrassed in the betterment of their property in order that they may carry out the purposes for which they were created. [11] Every easement includes what are termed "secondary easements," that is, the right to do such things as are necessary for the full enjoyment of the easement itself (*North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 Pac. 69].); and repairs and replacements which cause no greater burden are permitted to be made (*City of Gilroy* v. *Kell,* 67 Cal. App. 734 [228 Pac. 400]). The question really resolves itself into what may be considered a reasonable use of the right as acquired. [12] Manifestly it would be impossible in a judgment to describe and limit the exact kind and character of the materials that might be used by the company when it is called upon to repair or reconstruct its lines. Any question which might arise by reason of such repairs or reconstruction as to whether such change was justified under the use, or

whether it created an additional servitude beyond that originally imposed, is to be determined in an appropriate proceeding. This question, however, is not now before us.

[13] And finally, it is urged that the court had no jurisdiction to set aside any definite right of way underneath the poles. The character and extent of the way claimed by prescription are fixed, and they were determined by the user under which the right was gained. There is ample evidence in the record to show that the easement acquired extended through the area delimited and set apart and to which plaintiff is confined in the use of the easement.

From what we have said it follows that the judgment should be and it is hereby affirmed.

Knight, J., and St. Sure, J., concurred.