[Civ. No. 8273. First Appellate District, Division One.—April 28. 1932.]

ARNON R. FLETCHER et al., Appellants, v. LANDIS A. STAPLETON et al., Respondents.

C. E. McDowell for Appellants.

Fred Mansur for Respondents.

KNIGHT, J.—This is an appeal by plaintiffs from a judgment entered in an action involving an easement for driveway purposes across the end of defendants' lot. The controversy arose out of the following facts which are not disputed: Defendants were the owners of two adjoining, residential lots in Los Angeles, to wit: Lots 179 and 171 in tract 5832. As shown by the maps which are made part of the record herein, the block in which said lots were laid out was bounded on the east by St. George Street, which extended in a northerly direction along the easterly ends of lots 176, 177 and 178, and for a few feet along the easterly end of lot 179, turning thence easterly and extending along the easterly boundary of lot 14, which was triangular in shape and lay between St. George Street and the easterly end of lots 179 and 171, thereby cutting off lots 179 and 171

from access to St. George Street, except for a few feet of lot 179 bordering thereon. In April, 1925, defendants sold and conveyed by grant deed to plaintiffs lot 171, which ran back to and abutted on another street, named Monon Street, but in order to give plaintiffs access also to St. George Street defendants conveyed to them by the same instrument ''a right of way and easement over the East ten (10) feet of Lot One Hundred Seventy-nine (179) of said Tract, for driveway purposes''. At that time neither St. George Street nor the lots had been graded or improved, the grade of the street adjacent to lot 179 being substantially on a level therewith. Soon after plaintiffs acquired lot 171, and in August, 1925, they graded it so as to lower the level thereof four feet below the level of lot 179, and thereafter they constructed a dwelling thereon. While such construction work was going on plaintiffs obtained access to St. George Street over lot 14, with the permission of the owner thereof; and at no time did they attempt to use the easement across defendants' lot. Later the city caused the grade of St. George Street to be lowered some seventeen feet below the level of lot 179, over which the right of way was granted; and the street was paved. After the street work was finished defendants graded lot 179 down to an elevation of about nine feet above the street level, and soon afterward constructed a two-story dwelling thereon. As a result of the foregoing physical changes the northerly end of the ten-foot strip of land over which the right of way was granted was left four feet above the level of plaintiffs' lot and the southerly end was left nine feet above the level of St. George Street. For those reasons plaintiffs were unable to use the same for any purpose; whereupon they asked defendants if they would buy a portion of lot 14 so as to provide plaintiffs with access to St. George Street, which defendants declined to do. Plaintiffs then stated that they would insist on using the right of way called for by the deed, and defendants replied: '' . . . there it is, go ahead and use it''; but on account of the conditions mentioned plaintiffs could not do so. Shortly afterward the owner of lot 14 informed plaintiffs and defendants that unless they purchased the portions of lot 14 they were then using for rights of way the lot would be utilized for building purposes; whereupon, and in January, 1928, plaintiffs purchased a twelve-foot strip

across the same, and defendants purchased the remaining triangular-shaped piece adjoining lot 179. Soon after purchasing the same defendants commenced to build a concrete garage thereon, a portion of which overlapped the ten-foot strip of lot 179 over which they had granted the easement, and when the concrete floors were laid and the forms for the walls were erected plaintiffs served notice on defendants that if the garage was built as planned they would commence action to have the same removed and for damages.

Accordingly plaintiffs brought this suit to compel defendants to remove the garage from that portion of the strip of land covered by the right of way, to restrain future interference therewith, and to recover damages in the sum of $1,000. The trial ocurt found in substance that on account of the changed conditions hereinabove set forth, all of which were brought about subsequent to the granting of the easement, and without fault on the part of defendants, notably the lowering of the level of plaintiffs' lot at one end of the right of way and the level of the street at the other, it was neither practicable nor possible to use said easement without first going upon defendants' lot and excavating and removing therefrom large quantities of earth, and building on each side of the cut retaining walls of sufficient strength and size to protect the driveway and preserve defendants' property, which necessarily would materially increase the burden on the servient estate and cause irreparable injury thereto. And the court concluded, therefore, that under such circumstances and in view of the fact that plaintiffs had already acquired and were using another and more convenient right of way from St. George Street to their property, it would be inequitable either to award damages or grant the injunctive relief sought. However, it gave plaintiffs judgment for $300 ''for the loss of use'' of said easement, and thereupon, in accordance with the prayer of the cross-complaint, quieted title to the strip of land covered by said easement in defendants.

Section 811 of the Civil Code provides that a servitude is extinguished: '' . . . 3. By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise''; and in the case of *Lux* v. *Haggin*, 69 Cal. 255, it is held (p. 292) [4 Pac. 919, 10 Pac. 674, 692] that the

code provision above quoted "seems to be a recognition and statutory declaration of the rule which Professor Washburn says has become well settled, that if the owner of a dominant estate do acts thereon which permanently prevent his enjoying an easement, the same is extinguished, or if he authorize the owner of the servient estate to do upon the same that which prevents the dominant estate from any longer enjoying the easement, the effect will be to extinguish it. (Easements and Servitudes, 560.)" And in this connection also the same author states (p. 699) that "Another mode of extinguishing easements is by such a change in the condition of the estates, in reference to which such easements have existed, as to render the use and enjoyment thereof no longer of any practical utility or avail."

█ Furthermore, section 806 of the Civil Code provides that the extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired; and it is well settled that the burden of the dominant tenement cannot be enlarged to the manifest injury of the servient estate by any alteration in the mode of enjoying the former; nor can the owner thereof commit any trespass upon the servient tenement beyond the limits fixed by the grant (*North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 Pac. 69]); nor can the limitations in the exercise of the easement be changed at the pleasure of the grantee (*Winslow* v. *City of Vallejo,* 148 Cal. 723 [113 Am. St. Rep. 349, 5 L. R. A. (N. S.) 851, 84 Pac. 191]).

█ It is equally well settled that the grantee of a right of way over another's land merely has the privilege of passing over the land in some particular line (*Kripp* v. *Curtis,* 71 Cal. 62 [11 Pac. 879]), and that he acquires no ownership in the fee of the soil (*City and County of San Francisco* v. *Calderwood,* 31 Cal. 585 [91 Am. Dec. 542]).

█ After applying the foregoing legal principles to the admitted facts of the present case, we are of the opinion that the judgment of the trial court is sustained thereby, for it is evident that by reason of the acts of plaintiffs in grading their lot and the act of the city in lowering the grade of St. George Street, in such a manner as to prevent the use of said right of way it became of no practical utility or avail, and therefore to all intents and purposes was extinguished, unless plaintiffs made it available by entering upon

the servient estate and excavating deep cuts through it, which under the authorities above cited they were not allowed to do, because as the trial court found such acts would increase the burden on the servient estate, and result in irreparable injury thereto. Upon this latter point plaintiffs cite the case of *Ballard* v. *Titus,* 157 Cal. 673 [110 Pac. 118], to the effect that the grant of a "right of way" carries the implied right to make such changes in the surface of the land as are necessary to make the right of way available for travel in a convenient manner; but manifestly this does not mean that the grantee may so change the surface of the land as to seriously injure or likely destroy the usefulness of the servient estate.

Aside from the question of extinguishment, however, the trial court held that under all the circumstances it would be inequitable to grant the injunctive relief prayed for, and presumably for that reason it allowed plaintiffs $300 "for the loss of use" of said easement, which amount, it would seem, reasonably compensated them for any contribution on the part of defendants to such loss. The measure of damages for unlawful interference with the enjoyment of an easement is the difference between the value of the claimant's property just before the interference and its value immediately after the obstruction was completed. (9 Cal. Jur. 963.) Here, however, as the evidence shows and the trial court found, the easement had been rendered useless by the acts of plaintiffs themselves in reducing the elevation of their lot and of the city in lowering the grade of St. George Street, which occurred long before the defendants started to build their garage. Necessarily, therefore, the building of the garage had nothing to do with the loss of the easement; and since defendants were directed to pay to plaintiffs $300 toward a loss to which defendants had in no way contributed, it would seem that plaintiffs have no just cause for complaint.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.