[Civ. No. 2793.   Fourth Dist.   Nov. 7, 1941.]

VIRGINIA DE LA CUESTA, Respondent, v. ABBONDIO BAZZI et al., Appellants.

E. W. Squier, J. F. Goux and William Olney, Jr., for Appellants.

W. P. Butcher for Respondent.

GRIFFIN, J.—The evidence produced, as reflected by the transcript, consumes over 1300 pages. Voluminous briefs have been filed setting forth the points and authorities and arguments of respective counsel. The essential facts in the case may be thus summarized:

Respondent owns the westerly portion of lot 9 of the subdivision of Rancho de la Vega, situated in Santa Barbara County. The entire lot 9 contains 748.35 acres. The portion owned by respondent contains 234.25 acres. Appellants own a tract of land lying immediately west of and adjoining respondent's land, which tract is known as Lot 7B of the Rancho de la Vega, and contains 226.09 acres. Appellants also own other lands known as Lot 7C, lying immediately north of and adjoining respondent's property. Ramòn de

la Cuesta originally owned the entire Rancho de la Vega and upon his death this rancho was subdivided among his heirs into nine separate parcels. A map of the partition of that rancho was filed February 11, 1892. The commissioner who made this partition endorsed upon the map and made a part of the partition the following:

"Lots 9, 7, 6 and 5 are entitled in equal portions to all the waters of the Nojoqui Creek which at the time of this partition were appurtenant to the entire Rancho de la Vega as represented on this map; and the owner of each of said lots is to be entitled to lay and maintain a pipe for the conveyance of its share of said water over each and all of the others of said four lots."

In the partition of the rancho by deed dated March 1st, 1893, lot 9 was conveyed to Eduardo de la Cuesta and lot 8 to Gerardo S. de la Cuesta. By deed dated May 10, 1893, Eduardo de la Cuesta conveyed lot 9 to Gerardo S. de la Cuesta, and by deed dated May 10, 1893, Gerardo S. de la Cuesta conveyed lot 8 to Eduardo de la Cuesta. Subsequently, Gerardo S. de la Cuesta conveyed portions of lot 9 to others who are not parties to this action. Thereafter, by deed dated March 24, 1910, Gerardo S. de la Cuesta conveyed to his wife, Virginia P. de la Cuesta, respondent herein, the portion of lot 9 now owned by her and described in respondent's complaint. Joaquin de la Cuesta, who received lot 7, conveyed that lot to Eduardo de la Cuesta by deed dated June 21, 1897. Eduardo de la Cuesta executed a deed of trust, which included lot 7, on December 23, 1930, and lot 7 was subsequently sold by the trustee and the property was conveyed to the Security First National Bank of Los Angeles by deed dated February 16, 1934. After the partition of the rancho, lot 7 was divided into three parts, namely, lots 7A, 7B and 7C. Lot 7B and lot 7C were conveyed by said bank to the appellants by deed dated November 18, 1936. Lot 7B and lot 9 are subject to an easement of the state highway, which closely follows the boundary line between the two lots. The Nojoqui Creek flows in a northerly direction over lot 7B approximately parallel with and just west of the highway and west of the westerly line of respondent's land.

There are two small ravines or gullies which cross the lands of respondent from east to west and extend westerly beyond

respondent's land to Nojoqui Creek. There was a cattle pass or culvert across each of these ravines which passes were known as the north cattle pass and the south cattle pass respectively.

Respondent claims an easement over and upon a portion of lot 7B consisting of a strip of land approximately 130 feet wide and 700 feet long which was and has been enclosed, at least intermittently, by an old fence for over 40 years and which strip lies immediately west of the highway. Through the length of this strip of land flows, in a northerly direction, the Nojoqui Creek. There is a curve and a narrow gorge in the creek which divides the claimed easement into two parts, designated as the north part and the south part. This claimed easement was fenced about the year 1892 by respondent's husband and has been made use of by the owners and occupants of all of lot 9, or the occupants of the westerly portion thereof, since that time, for the purpose of watering and resting cattle and stock which had been grazing on lot 9 or portions thereof. The evidence indicates that the use of this claimed easement was due to the fact that there was no water or not sufficient water on lot 9 for this purpose.

Respondent now claims to have an easement appurtenant to her land over and upon the portion of lot 7B bounded by the old fence line for the purpose of taking from the creek "one-fourth of all the waters thereof and to permit the cattle and livestock grazing" on her lands to drink of the waters of that creek as the same flows over the lands of appellants by passing from her lands through or under these two cattle passes or culverts to the creek on the lands of appellants. She brought this action to enjoin and restrain appellants perpetually from interfering with her use of this easement, from placing any obstructions on this strip of land, from destroying the fences and closing the same or in any manner interfering with the use and occupation by the respondent of the said land for this purpose. This is the substance of respondent's claims as set out in her pleadings.

During the pendency of this action and prior to April 26, 1939, the location of the state highway, where the same passed along the easterly side of the creek, along, over, and near the line between the lands of respondent and appellants, was changed to some extent. The channel of the creek, at one point, was moved westerly approximately 35 feet, but is

still within the portion of the claimed easement according to the old fence line. This change was made on the south half of appellants' land claimed to be subject to the easement, immediately west of the south cattle pass and extending northerly approximately 200 feet. Prior to the change made in the location of the state highway and the creek channel there was a steep bank varying in height along the westerly side of the creek bed, opposite the southerly cattle pass and extending northerly along the bed of the creek to the northern boundary line of the claimed easement. The fence on the west boundary of the claimed easement ran along the top and near the edge of this bank. A portion of the area west of the westerly outlet of the south cattle pass was filled in with soil, gravel and rocks and the new highway now runs along the top of this fill. A new cattle pass or culvert, but 84 feet in length, in the same location as the former one was built. It now extends westerly under the fill to the present bed of the Nojoqui Creek. The old westerly fence which ran along the top of and near the edge of the old west bank was removed and a new fence was built by the state along the top of the bank as changed.

The highway, where the most northerly of the two cattle passes existed, was relocated so that the highway as it now exists runs over and along real property belonging to respondent approximately 30 feet easterly from the highway as it existed at the time of the commencement of this action and prior to the change in the location of the highway. The new northerly cattle pass was located at the same place as the former, but was increased in length. The west entrance thereof still terminated within the claimed easement as previously fenced.

Respondent, in 1922, installed at the south end of the claimed easement and within its enclosure, a pump house and pipe line by means of which water, for domestic purposes, was conveyed to respondent's premises on lot 9. By cross-complaint appellants sought to enjoin respondent from running cattle on the claimed easement; from maintaining fences thereon; and sought a decree adjudging appellants to be the owners thereof in fee and declaring that respondent had no right or easement upon the real property involved. The trial court found that "for more than five years continuously prior" to the commencement of the action, the

easement described was fenced on its exterior boundaries and was accessible from respondent's property by means of the cattle passes described and was so used; that appellants and cross-complainants are now the owners in fee of the real property subject to the easement described; that respondent and the owners of the remaining portion of lot 9 were and are now the owners of the right to take one-fourth of the waters of the creek as described, as appurtenant to the real property; that the use of the easement, contrary to appellants' contention, was not permissive; that the use of the easement, cattle trail, and cattle passes, for more than five years preceding the acquisition of lots 7B and 7C by appellants, was and now is adverse, open, continuous, hostile and under a claim of right of respondent and her predecessors in interest; that only a portion of the bed or channel of the river, within the boundaries of the claimed easement, has been changed; that appellants, at the time of and prior to the purchase of lots 7B and 7C "had actual and/or constructive knowledge and/or notice of the said easement and of the right to take by pipe line a portion of the waters of said Nojoqui Creek, and of the record ownership of one-fourth of the waters thereof"; that there has been no alteration in the character and use of the easement by the improvement and construction work carried out by the state; that respondent has not altered or changed the character and use of the easement and that no additional burden or damage has been imposed upon the appellants by the present use and enjoyment by respondent of the easement; that respondent is the owner of an easement within the boundaries of the old fence line for the use and purposes described and the owner of and entitled to one-fourth of all the waters of the creek subject to whatever right the remaining owners of lot 9 may have in said one-fourth of said water; that appellants be perpetually enjoined from taking possession of or interfering with respondent's use and enjoyment of said strip of land to the extent of the easement and from interfering with respondent's right to take water by means of a pipe as described in the partition agreement. By the judgment respondent was found to be the "owner of an easement in and to and entitled to the possession of all that certain real property" which was bounded by the old fence line "for the purpose of taking . . . one-fourth of all the

waters thereof, subject to whatever right, title and interest the owners of the remaining portions of said lot 9 may have in and to said one-fourth of said waters, and to permit the cattle and livestock grazing upon the real property described . . . to drink of the waters flowing in said Nojoqui Creek by going . . . upon said easement . . . by means of two cattle passes'' as described ''together with the right to lay and maintain a pipe over and across said easement . . . to take one-fourth of the waters of Nojoqui Creek for the use and benefit of said owners of said lot 9.'' The decree also adjudged appellants to be the owners of the real property, described as being within the old fence line, subject and servient to said easement as described.

Appellants first contend that respondent failed to prove any prescription or other right to have cattle or livestock from her land go onto the appellants' lands or drink from the creek thereon.

We will first discuss the sufficiency of the evidence to establish this right. Respondent testified that her husband, Gerardo, about six months after the partition of the rancho, built a fence around the claimed easement, and his cattle, 40 to 60 in number, came down off of the hills from lot 9, passed through the two cattle passes, watered from the creek, rested, meandered around over the extent of the claimed easement, and then returned to the hills; that this was their daily custom for many years, except in some of the winter months when there was sufficient water in the gulches on lot 9. This testimony was corroborated by several other witnesses.

There can be no question about the time element and the continued use of the claimed easement as to the south cattle pass and the southerly portion of the easement. The evidence as to the continual use of the north cattle pass and the north one-half of the easement is conflicting. There is ample evidence, however, supporting the court's finding in this respect and this finding cannot be disturbed on appeal. (*Chichester* v. *Seymour*, 28 Cal. App. (2d) 696 [83 Pac. (2d) 301].)

As opposed to appellants' contention that the use of the claimed easement was only permissive, the evidence discloses that Eduardo de la Cuesta, original owner of lot 7, and a brother of respondent's husband Gerardo, had a con-

versation about 20 years ago; that at that time the fence around the claimed easement had been torn down; that respondent then heard a conversation between the brothers in which conversation her husband told Eduardo: "You know where the line is and I am going to fence that"; that Eduardo "got very mad and whipped his horse and off he went." She also testified that after she acquired the property from her husband, Eduardo came to her house and had lunch; that her husband became very angry and said to him: "Why didn't you fix everything as I wanted, so I could get over to the creek?" That Eduardo "got very mad and didn't finish the meal. He got up and went away"; that "he mentioned the creek"; that at that time the fence was down in the creek.

Respondent's daughter corroborated these conversations and claimed in addition that her father said: "That is my creek; that water is my water"; that "Ed argued back and forth and said 'No, no' "; that her father said "Yes, it is my creek and just to show you I will fence the rest of it too"; that she went down with her father to repair the fences that had been torn down. This evidence, together with the other circumstances surrounding it, indicates that the use was adverse and under a claim of right.

The question as to whether possession and use is hostile and under a claimed right communicated to the owner of the land is one for the court to determine as a fact in the light of the relations between the parties and the surrounding circumstances, and where the evidence is substantial although there is a conflict upon the subject, the findings will, of course, not be disturbed here. (*Wells* v. *Dias*, 57 Cal. App. 670 [207 Pac. 913]; *Pacific Gas & Electric Co.* v. *Crockett Land & Cattle Co.*, 70 Cal. App. 283 [233 Pac. 370].) The evidence supports the findings in this respect.

It is next argued that appellants were *bona fide* purchasers for value and bought without notice, actual or constructive, of respondent's claimed rights to the easement. The evidence discloses that the appellants were, prior to the purchase of lot 7B, engaged as partners in the dairy business on property, the boundary line of which is partially contiguous to the water gap in question; that appellant Bazzi was frequently in the vicinity of the water gap and had seen the pump house and three of the fence lines; that the partners

had been watering cattle in the creek just south of the water gap in question.

Appellant Mariani testified that he saw some of the fences and the pump house before he bought the property. Appellant Zocchi testified that before he bought lot 7B he and the other appellants went all over lot 7 as far as they could "around the line"; that he saw a man building a fence across the creek on "our property"; that he drove over the old highway between lots 7 and 9 at least once a week; that he had seen the pump house from the west side of the creek.

Respondent testified that appellant Zocchi called on her in November, 1936; that she pointed out the south cattle pass and all of the fences; that she asked him if he was buying lot 7B and that he replied that he thought so but that the lines were so mixed; that she showed him a map and said: "Here is our water gap" and that he saw it from the porch; that she told him of the north cattle pass and asked him to go see it as he went back. This evidence, although conflicting, was corroborated to some extent by respondent's daughter.

The force and effect of these conversations as proof that the appellants were put upon inquiry, were matters for the determination of the trial court. On this issue the trial court found in favor of the respondent. The evidence supports the finding. (*Rubio Cañon Land & Water Assn.* v. *Everett,* 154 Cal. 29 [96 Pac. 811].)

It is next claimed that the evidence conclusively proves the fact that changes were made upon the servient tenement which precluded respondent from thereafter exercising her claimed easement at the place or in the method, mode or manner in which she had theretofore exercised her claimed easement; that the changes involved necessarily would impose a new and greater and different easement and burden upon appellants' lands which were therefore wholly terminated and ended.

There is no question but that the old fence in the instant case was constructed for the sole purpose of confining the cattle within a definite area called a water gap so that the cattle upon emerging from either cattle pass could wander about within the enclosure, drink at will, and return to the grazing lands above. The evidence conclusively shows that the bed of the stream was not changed to any great extent and only

for a short distance within the enclosure. It cannot be said that the use of the claimed easement has been altered or changed from the mode or manner in which respondent had theretofore exercised her claimed easement. No new, greater, or different use or burden was imposed upon appellants' lands. Until the lands are thus burdened appellants cannot be heard to complain. There was nothing definite or fixed about the location of the channel and the right of the respondent to the use of the water gap was not dependent upon any fixed location or stream bed. Her prescriptive right was and is to use the water wherever it could be found at any place within the limits of the old enclosure.

In 67 Corpus Juris, p. 959, sec. 407, it is said:

"The person entitled to rights by prescription is not bound to use the water in exactly the same manner or to continue the same precise application of it as that exercised during the time when the right was being acquired, provided the altered use sought to be made does not impose an added burden on the servient tenements . . . ." (See also *Lux* v. *Haggin,* 69 Cal. 255, 412 [4 Pac. 919, 10 Pac. 674]; *Willits Water etc. Co.* v. *Landrum,* 38 Cal. App. 164 [175 Pac. 697]; *Crane* v. *Stevinson,* 5 Cal. (2d) 387 [54 Pac. (2d) 1100].)

It has been uniformly held that where there is no change in the character or use of the easement and no injury is inflicted upon the owner of a servient tenement, the owner of the easement does not lose the right to the use thereof. (*Burris* v. *People's Ditch Co.,* 104 Cal. 248 [37 Pac. 922]; *Noel* v. *Capobianco,* 218 Cal. 481 [23 Pac. (2d) 511].)

One of the latest expressions on this subject by our Supreme Court is *Ward* v. *City of Monrovia,* 16 Cal. (2d) 815 [108 Pac. (2d) 425], wherein it was held that the easement of a city to maintain a pipe line over privately owned land was not forfeited by changes of location during reconstruction where the deviations were unsubstantial, and were wholly within the limits of 10 and 20 foot strips of land which the city was entitled to use. We do not see how appellants can claim that the alterations above mentioned worked any substantial injury to or in any degree added any additional burden to appellants' property.

Lastly, appellants complain because the findings in the respects specified are not supported by the evidence, not responsive to the issues and do not support the judgment;

that there is no finding or adjudication as to how much water respondent .is entitled to take as appurtenant to her land; that the findings and judgment are fatally uncertain.

The trial court found that respondent and the other owners of lot 9 are entitled to take one-fourth of the waters of the Nojoqui Creek. The judgment recites that respondent is entitled to take from the creek one-fourth of all the waters thereof, subject to whatever interest the owners of the remaining portions of lot 9 may have in said one-fourth. The owners of lot 9, at the time of the partition, according to the pleadings and evidence, were only entitled to one-fourth of all the waters of the Nojoqui Creek *"which at the time of this partition were appurtenant to the entire rancho."* In the light of the issues, pleadings and remaining provisions of the judgment, this is plainly the construction intended by the decree and should be so construed and interpreted. (*Pacific Paving Co.* v. *Vizelich,* 1 Cal. App. 281 [82 Pac. 82].) Regardless of the claimed variance between the findings and the judgment we think the pleadings, findings and judgment, when considered together, very plainly give appellants title and ownership to the property subject to the easement of respondent above mentioned and described. (*Roger* v. *Struven,* 44 Cal. App. 528 [186 Pac. 817]; 14 Cal. Jur. 958, sec. 54.)

Appellants complain because the court did not limit the number of cattle that may enjoy the benefit of the claimed easement. An easement acquired by prescription is limited in its extent by the use to which the owner of the dominant tenement has put the property. (*Southern . California Investment Co.* v. *Wilshire,* 144 Cal. 68, at 72 [77 Pac. 767].) Any unusual or extraordinary use by the respondent of the water gap which may injure the appellants could be hereafter controlled by the court. (*Strong* v. *Baldwin,* 154 Cal. 150 [97 Pac. 178, 129 Am. St. Rep. 149].)

Appellants further complain that the trial court should have found what proportionate share respondent, as well as the other owners of lot 9, were entitled to take of the one-fourth of all the waters of the creek; that because the other owners were not joined in the action the court could not make an adjudication on the issue raised as between the respondent and the appellants.

By this action respondent seeks, among other things, a permanent injunction against appellants from taking possession of or interfering with the use and occupation of the strip of land embraced within the claimed easement. Respondent does not seek, by her complaint, to determine the respective interests of all the co-tenants in and to the waters of the creek. It has been held that one tenant in common, insofar as he interferes with the joint property to the damage or injury of his co-tenant, is a trespasser to that extent. He cannot assume, because he has a certain interest in the common property, to deal with it or use it to the detriment of other co-owners, and every one of the parties in such a case has the right to protect his respective interest.

It has also been held that the use by a tenant in common of more than his share of the water may be enjoined. (*Barton Land etc. Co.* v. *Crafton Water Co.,* 171 Cal. 89 [152 Pac. 48].)

Section 384 of the Code of Civil Procedure provides that all persons holding as tenants in common or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such parties. Section 389 of the Code of Civil Procedure provides that the court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, *or by saving their rights.* (*Himes* v. *Johnson,* 61 Cal. 259.)

It cannot be contended here that the rights of other parties interested were not saved to them by the judgment. Appellants cannot be heard to complain because respondent was found to be entitled to take one-fourth of the waters of the creek subject to the rights of the owners of the remaining portions of lot 9. Those remaining owners were not necessary parties to the determination of the issues presented under the pleadings.

It should also be noticed that nowhere did the appellants set up a nonjoinder or misjoinder of a party or allege that other parties were necessary or proper to the action. They cannot, for the first time on appeal, attack the validity of the findings or judgment insofar as they adjudicate the rights of the parties present in the action. (*Work* v. *Camp-*

*bell,* 164 Cal. 343 [128 Pac. 943, 43 L. R. A. (N. S.) 581].)
The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court
was denied December 29, 1941.