[Civ. No. 17206. First Dist., Div. One. Mar. 25, 1957.]

MARY A. CRIMMINS, Respondent, v. WALTON A. GOULD et al., Appellants.

Crist, Peters & Donegan and Elton F. Martin for Appellants.

Robert E. Burns, Martin Lalor Crimmins and Crimmins, Kent, Draper & Bradley for Respondent.

BRAY, J.—Plaintiff sued in declaratory and injunctive relief primarily to determine that defendants have no rights in a certain roadway. Defendants cross-complained for like relief primarily to establish their rights in said roadway. From a judgment in favor of plaintiff and against defendants and cross-complainants, the latter appeal.

### QUESTIONS PRESENTED

1. Did "McCormick Lane" become a public way?
2. Was the easement in said lane extinguished by misuse?
3. Should lesser relief have been granted plaintiff?
4. Amendment of complaint to conform to the proof.
5. Was the court's determination unconstitutional?

### EVIDENCE

In 1929 McCormick owned a tract of land in Atherton. It was bounded on the north by Watkins Avenue and on the south by Fair Oaks Lane. That year McCormick built Mc-Cormick Lane to give access to Fair Oaks Lane. The lane runs northerly from Fair Oaks Lane to the junction of the southerly lines of Parcels 1 and 2. Adjoining Parcel 1 on the west is Parcel 2. Only the southeasterly point of Parcel 2 touches McCormick Lane. At the time the lane was first constructed Parcel 1 as well as the land through which the lane ran was owned by McCormick. Parcel 2 never was.

The McCormick land other than Parcel 1 has been subdivided and is now owned by Hecker, Hans, Crimmins, Gould and Baxter. Express rights of way over McCormick Lane were deeded to all of these owners except Baxter who was given an oral right of way. In 1931 McCormick deeded the lane to Crimmins in fee. Crimmins later deeded the Crimmins property and the lane to plaintiff, his wife.

The map shows McCormick Lane as originally maintained, and the extension thereof and Burns Avenue as constructed by defendants.

The lane is paved, with a red rock fill entrance to Parcels 1 and 2. Both Parcels 1 and 2 now belong to defendants Walton and Emilia Gould. In 1926 McCormick conveyed Parcel 1 to a predecessor of the Goulds together with "an easement of Right of Way for ingress and egress," such easement to commence five years thereafter.

At the time of trial, the Goulds, of record, appeared to own two portions of the McCormick property—the former

Gibbs place with its easement over McCormick Lane, and Parcel 1, which had an easement of ingress and egress to and from McCormick Lane. In addition they now own Parcel 2. In 1954 they subdivided Parcels 1 and 2 into 29 residential lots. Six of these are wholly within Parcel 1 and two other lots lie substantially within it. By a roadway dedicated to the public and accepted by the town, defendants extended McCormick Lane northerly across Parcel 1 to its junction with Watkins Avenue. They also constructed "Burns Avenue," a public road, across Parcel 2 connecting it to the extension of McCormick Lane on Parcel 1.

At the entrance to McCormick Lane on Fair Oaks Avenue there has been continuously posted a sign reading "McCormick Lane." At one time a sign stated "Not a Through Street" or "Dead End Street." No other signs have been posted there. About 1925, Parcels 1 and 2 were planted with pear and walnut trees. During the early years the orchard and the lane were separated by a wire fence which the orchardist removed in 1941. There has been no obstruction since. From 1931 through 1954 the orchard was operated by tenants who used the lane as a means of ingress and egress in their orchard operations. The peak of the use was in harvesting season when for about three and a half days fruit pickers and trucks hauling fruit used the lane. Otherwise the use by the orchardist was an average of at least once a week. Some fruit went out over Watkins Avenue.

Sometime between 1940 and 1942 Crimmins quarreled with an orchardist and put cardboard signs at the orchard end of the lane and at a place about midpoint on the lane, saying that it was a private road, permission to pass revocable. The signs were directed at the orchardist and were torn down and thrown away. None have been posted since, nor has there ever been any barricade at the Fair Oaks Lane entrance. Prior to 1948 no taxes were assessed against the lane. Since 1948 taxes for plaintiff's residence and the lane have been assessed together to plaintiff.

In 1935 Mr. Crimmins offered to deed the lane to Atherton but the offer was refused unless the road was rebuilt to specifications. Instead Crimmins resurfaced the road, the cost being borne by then property owners, McCormick, Gibbs' predecessor, Baxter and Crimmins. The other property owners including the owner of Parcel 1 refused to pay. Thereafter the road was maintained solely at the expense of the four above mentioned property owners.

The lane was used by others not connected with the properties surrounding the lane. The Atherton police patrolled it occasionally. Sightseers and those who thought the lane was a public street would drive in and out. Groups would drive to the orchard end for a picnic or to park. "Necking" couples drove in. A few cars were abandoned on the road. Public utilities were granted rights of way in the lane. In 1952 sanitary district inspectors and workers used it in connection with the installation of a sewer outfall system across the parcels. About 20 years ago at its junction with Fair Oaks Lane Atherton installed guard rails on each side of the lane, and has maintained them since. At Mr. Crimmins' request in 1935, the town installed an electric street light at midpoint in the lane. Ever since the town has supplied the current and upkeep of the light. Chuckholes in the lane were repaired from time to time by the town just as any other street would be repaired. In 1946 Mr. Crimmins in a letter to defendants' predecessor claimed ownership of the lane and objected to the manner in which the tenant farmer was using the lane and several discussions were had between them in which Crimmins disputed the use of the lane. Crimmins notified defendants' predecessors that he was opposed to the proposed subdivision extending McCormick Lane into it. On learning of the new subdivision Crimmins notified defendants that the lane was not to be connected to the subdivision. Since the connection was made in 1954 the use of the lane and the wear and tear thereon has greatly increased.

On this evidence, the court found that the lane had never become a public way; that the lane was subject to an easement "as a private means of ingress and egress for Parcel One;" that no easement or right of way in or over the lane ever existed as to Parcel 2; that by defendants' acts in subdividing Parcel 2 and in laying out public roads on Parcels 1 and 2 connecting McCormick Lane with Watkins Avenue the burden on the lane has been substantially increased by the public and by occupants of Parcel 2 and their invitees, causing substantial damage to plaintiff. The burden of maintenance on McCormick Lane was slight as compared to what it will be; that the acts of defendants are incompatible with the nature and exercise of the servitude appurtenant to Parcel 1 granted in 1926 over the lane; it is impossible to use the easement granted in 1926 as it was intended to be used or to segregate the use of the lane by the owners of Parcels 1 or 2, from its use by the general public; that because of defendants' acts

they no longer have any right to use, occupy or pass over the lane. The court concluded that defendants had not acquired as appurtenant to Parcel 2 any easement or right of way; that the easement appurtenant to Parcel 1 has been extinguished and thereupon enjoined defendants from using it.

### 1. *Public Way.*

The foregoing recital shows that the lane never became a public way. Such use of it as was made by the public was permissive only. The small amount of improvement and repair made by the town did not constitute an adverse use or an acceptance by the town of the lane as a public way. The only offer of it as such was rejected by the town. ■ There are only two methods by which private property may become a public way other than by purchase: (1) By an offer of dedication by the owner and a formal acceptance by a public authority or long continued use by the public itself. This did not exist here. (2) Where no express offer of dedication is made by the owner, by long continued adverse use by the public. In such event offer of dedication by the owner is presumed. The evidence showed no such situation here. See *Union Transp. Co.* v. *Sacramento County,* 42 Cal.2d 235, 240 [267 P.2d 10], for discussion of these two methods.

■ Defendants contend that the use by the public of Mc-Cormick Lane was such as to give rise to the presumption mentioned in *Walter G. Brix, Inc.* v. *Brown,* 145 Cal.App.2d 177, 178 [302 P.2d 74] : ". . . there is a general presumption that a use by other than the owner is adverse and not permissive . . ." The sporadic use by the public of Mc-Cormick Lane is not the type of use required. ■ In the Brix case (p. 178) the court quoted from *Venice* v. *Short Line Beach Land Co.,* 180 Cal. 447, 450 [181 P. 658] : " 'In order to constitute such dedication, or such abandonment, by the owner, his intention to that effect must appear . . .' " and further stated that whether a dedication of land for public purposes has occurred in any instance is a conclusion of fact to be drawn from the circumstances of the particular case.* There the facts were much stronger in favor of dedication than here. The reviewing court pointed out, however, that there was evidence to controvert the idea of dedication but that conflicts in the evidence were to be resolved by the

---

*This statement answers defendants' contention that the trial court's finding in our case on the subject of no public way is a conclusion of law and not a finding of fact.

trial court, which there resolved them in favor of dedication. In our case, if the presumption applies, it was overcome by the positive showing that the comparatively little use made of the lane by the public was a permissive one. Paraphrasing language in the Brix case (pp. 179-180), in many of the cases cited by defendants for the proposition that showings contrary to those found by the court in our case should upset the judgment, the language quoted is from cases wherein the reviewing courts upheld findings of trial courts on conflicting evidence that a dedication of the particular roadway had been made.

2. *Extinguishment of Easement.*

■ The evidence clearly shows that Parcel 2 neither by grant nor prescription acquired any right to use McCormick Lane. The small use of it made by the owners or occupants of Parcel 2 over the years until recently was not an adverse one. The most serious question in the case is whether the easement of ingress and egress to and from the lane appurtenant to Parcel 1 was lost by the attempted change in use. Plaintiff concedes that the change from orchard to residential estates did not extinguish the easement. It is the acts of defendants in extending McCormick Lane to Watkins Avenue, dedicating it as a public street, and in allowing the owners of Parcel 2 to connect with McCormick Lane as extended, a public street, which runs across Parcel 2 and connects with Watkins Avenue, which plaintiff claims extinguished the easement of Parcel 1. Defendants thereby attempted to use the easement appurtenant to Parcel 1 for the benefit of all owners in Parcel 2 and the public generally. This caused the court to declare the easement abandoned by misuse.

Civil Code, section 811, subdivision 3, provides that a servitude is extinguished by "the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise; . . ." *Lux* v. *Haggin* (1886), 69 Cal. 255 [4 P. 919, 10 P. 674], said the section was a statutory declaration of the well settled rule "that if the owner of a dominant estate do acts thereon which permanently prevent his enjoying an easement, the same is extinguished, or if he authorize the owner of the servient estate to do upon the same that which prevents the dominant estate from any longer enjoying the easement, the effect will be to extinguish it." (Pp. 292-293.) In *Fletcher* v. *Stapleton* (1932), 123 Cal.App. 133 [10 P.2d 1019], it was held that grading by the dominant

owner of his lot plus the act of the city in lowering the street created a situation where there was no practical enjoyment left. Therefore, the easement was extinguished.

In cases involving extraordinary or excessive use, all parties in the instant case agree that the servient owner is entitled to an injunction. (See *De La Cuesta* v. *Bazzi* (1941), 47 Cal. App.2d 661 [118 P.2d 909] ; *Watson* v. *Heger* (1941), 48 Cal. App.2d 417 [127 P.2d 153].)

However, here the question is not the propriety of an injunction but rather the propriety of an extinguishment. There do not seem to be any California cases on extinguishment for excessive use by nondominant property where the right given to the dominant estate was by grant. But there are a number of out-of-state cases. The general rule is that misuse or excessive use is not sufficient for abandonment or forfeiture, but an injunction is the proper remedy. (16 A.L.R. 2d 610.) But where the burden of the servient estate is increased through changes in the dominant estate which increase the use and subject it to use of nondominant property, a forfeiture will be justified if the unauthorized use may not be severed and prohibited. (16 A.L.R.2d 613.) (See also *Penn Bowling Recreation Center* v. *Hot Shoppes* (1949), 179 F.2d 64.)

The situation here is different than that in *Tarpey* v. *Lynch*, 155 Cal. 407 [101 P. 10]. There a water ditch easement appurtenant to 80 acres of land under single ownership was held to accrue to each portion thereof divided among plural ownerships. ▮ Thus in our case the easement of ingress and egress appurtenant to Parcel 1, although acquired at a time of single ownership of that parcel, would be extended to the subdivided portions of that parcel. But not content with that, defendants here attempted to extend it to all parts of Parcel 2 which had no easement therein and also attempted to extend it to two public streets. It is not a question of merely "some increase in burden" upon a servient tenement by permitting an easement appurtenant to attach to each of the parts into which a dominant tenement may be subdivided, which comment (b) to section 488, Restatement of Property, and a number of cases cited by defendants, state is permissible. Rather it is one of the performance of acts by the owner of the servitude "which is incompatible with its nature or exercise." (Civ. Code, § 811, subd. 3.)

The California cases holding that injunctive relief is a proper remedy of the servient owner for unauthorized or

excessive uses of an easement* do not hold that it is the exclusive remedy. As hereafter pointed out an injunction could not grant plaintiff real relief where defendants have attempted to tie two public streets in to their easement.

The fact that the cases which to date have interpreted section 811, subdivision 3, were ones not of misuse or overuse of an easement but were ones where a change in conditions of either the dominant or servient estates made the easement impossible of use, does not mean that the application of the section is limited to such situations. Certainly here the situation which defendants deliberately brought about is "incompatible with" the "nature or exercise" of the easement.

■ Defendants quote 28 Corpus Juris Secundum 729, section 62: "The right to an easement is not lost by using it in an unauthorized manner or to an unauthorized extent, *unless it is impossible to sever the increased burden so as to preserve to the owner of the dominant tenement that to which he is entitled, and yet impose on the servient tenement only that burden which was originally imposed on it without the obligation attempted to be imposed on it by alterations.* The rule is especially applicable where the servitude is not materially increased. Such a misuser does not authorize the owner of the servient estate to prevent a further use of the easement for erecting obstructions, or by restraining the owner of the easement by force or violence, the proper remedy being an action for damages, or for an injunction if the remedy at law is inadequate." (Emphasis added.) The situation here meets the one covered by the exception described by the italized portion of the above quotation.

### 3. *Lesser Relief.*

■ Defendants' contention that lesser relief than a declaration that defendants no longer had any right to use McCormick Lane is without merit. A sign as suggested by defendants to the effect that the lane was restricted to the use of residents of McCormick Lane alone would not protect plaintiff's rights. Nor would an injunction attempting to restrain all persons from using McCormick Lane other than owners or residents fronting on the lane or their invitees be practicable or enforceable. Defendants have extended the lane in a sort of an inverted "Y." The northerly ends of each sec-

*De La Cuesta* v. *Bazzi, supra,* 47 Cal.App.2d 661; *Winslow* v. *City of Vallejo,* 148 Cal. 723 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann.Cas. 851, 5 L.R.A.N.S. 851]; *Watson* v. *Heger, supra,* 48 Cal.App.2d 417.

tion of the Y join Watkins Avenue, so that what is equal to two through streets run into McCormick Lane. Such a sign and injunction would not prevent all or any of the residents of Parcel 2 as well as the general public from using McCormick Lane. The only practical way of preventing this is to close McCormick Lane at its junction with Parcels 1 and 2.* This compels the extinguishment of defendants' easement therein. By causing McCormick Lane as extended by defendants and Burns Avenue as joined to it, to become dedicated public streets, defendants have made it impossible for the portion of McCormick Lane belonging to plaintiff to be used in a limited way. Unless a fence is built across McCormick Lane at its intersection with the southerly line of Parcel 1, there is no feasible way of keeping the general public as well as the residents of Parcel 2 out of McCormick Lane.

The situation here is almost identical with that in *Knotts* v. *Summit Park Co.* (1924), 146 Md. 234 [126 A. 280], where the court stated (p. 283 [126 A.]): ". . . the necessarily increased burden upon the servient estate brought about by the development of the entire tract, of which the dominant tenement formed a small part, worked an abandonment. By reference to the plat filed in the case it will be seen that, by the opening of the roads running north and south through other parts of the tract and connecting them with the avenue running east and west through the entire tract, easy access was given to the old right of way to all lot holders, including those outside of the dominant estate, who are many times the number of those in said estate.

"It is not a satisfactory answer to say that the use of this right of way must be only for the benefit of the lots within the dominant estate. A condition has been created by the act of appellee which makes it impossible, as a practical proposition, for appellant to confine the use to such lots. Tiffany's Real Property (1903 ed.), p. 733; 9 R.C.L. p. 814, § 70."

4. *Amendment.*

 Defendants contend that the court had no power to permit plaintiff to amend to conform to the proof. The complaint sought to have the easement appurtenant to Parcel 1

---

*It should be pointed out that in doing this defendants and the owners of lots in Parcels 1 and 2 are not deprived in any way of access to Watkins Avenue. Actually they continue to have two ways of reaching it from their lots. They are only deprived of direct access to Fair Oaks Lane, which they can reach by going around the block.

restricted to an agricultural use and to enjoin defendants and others from increasing the burden of that easement, and to have it declared that the owners and occupants of Parcel 2 had no right to use the lane. Plaintiff's opening statement was to the same effect. At the end of the trial plaintiff moved to amend the complaint by alleging the extinguishment of the easement appurtenant to Parcel 1 by inordinately increasing the burden on the lane. The court granted the motion. The court had the power to do so. (See *Jackson* v. *Thompson,* 47 Cal.App.2d 405 [118 P.2d 31]; *Feigin* v. *Kutchor,* 105 Cal. App.2d 744 [234 P.2d 264].) The amendment did not change the cause of action. At most, it changed the relief sought. (There was a prayer for general relief in the complaint.) The complaint alleged that the owners of Parcel 1 had no interest in the lane except a right of way for orchard purposes, although now defendants had replaced the orchard by a subdivision, and asked that their use be limited to that. This was tantamount to extinguishment by change, because the owners of Parcel 1 could not now use the lane under the requested limitation. The amendment conformed with the evidence produced at the trial.

5. *Constitutionality.*

■ While of course defendants' easement appurtenant to Parcel 1 was a valuable right, the fact that the court held that by their misuse of it they had abandoned that right, is not taking defendants' property without due process. It is not taking their property at all. It is merely determining that their own acts were such as the law determines constitutes an extinguishment of the easement. By their own acts they have made it impossible for either themselves or plaintiff to confine the use of the easement to the owners of lots in Parcel 1 only.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.