[Civ. No. 5978.   Fourth Dist.   Mar. 23, 1959.]

LECIL J. SLABACK et al., Appellants, v. CARLOS WAKEFIELD, Respondent.

Miller, Nisson, Kogler & Wenke for Appellants.

Webb & Lee and William P. Webb for Respondent.

GRIFFIN, P. J.—Plaintiffs-appellants, husband and wife, brought this action against defendant-respondent for claimed damages as a result of certain improvements to a roadway (designated as Lots A and B) in a tract of land laid out and dedicated by the owner-subdivider for the use and benefit of adjoining lot owners in the tract located in the foothills of eastern Orange County and used primarily for mountain homes.   The general terrain was rough, wooded and brushy. Silverado Creek flowed through this tract and lands owned by plaintiffs which are designated as Parcels 1, 2, and 3, on a map marked plaintiff's Exhibit 3 in evidence.   Defendant owned

Lots 24 to 33 inclusive, designated on said Exhibit, which are located south of plaintiffs' lots on a higher level. They sloped toward the intersecting roadway across plaintiffs' lots located at a lower level to the level of the said Silverado Creek. Lots A and B (the tract roadway) were unimproved at the time the events occurred which are the basis of plaintiffs' complaint. Each owner of lots in the tract was given the right to use said tract roadway for road purposes, including necessary slope easements for cuts and fills adjoining said roadways. Lot A (the roadway) extended over Silverado Creek and connected with Silverado Canyon Road, a paved public highway, at the time the tract map was filed, and no bridge crossed over said creek.

In 1952, defendant, desiring to make his lots available for sale, improved the roadway on Lot A, to which his lots adjoined, and erected a bridge over said creek, on Lot A, making his and other lots, including plaintiffs', accessible to Silverado Canyon Road. He made certain necessary cuts and fills in grading the roadway for general use and built a small bridge over said creek, all on Lot A. The fill that approached the bridge was about 4 feet at its highest point above the surface of plaintiffs' lot and was about 30 feet south of the bridge. Plaintiffs' adjoining lot has two levels, the lower level being that part affected by the fill. This fill forms the basis of plaintiffs' first claimed cause of action based on the theory that defendant barred plaintiffs from the free use of egress and ingress to their property.

The second cause of action arises out of claimed damages by reason of change of natural drainage waters flowing over a cliff located on the rear of one of defendant's lots and thence traveling northerly in a well-defined channel across it to Lot A (the roadway) and thence across plaintiffs' lot to the creek. It appears that defendant, as an addition to the improvements to the roadway, laid pipe in the bed of this channel, on his land, from a point below the waterfall to a standpipe in front of defendant's lot and near the southerly edge of Lot A (the roadway) thus protecting his land from open flow of flood-waters and allowing him to level his lot for a building site. Later he laid a pipeline under the roadway to plaintiffs' land and plaintiffs, by arrangements with defendant, and with full knowledge of the size of the pipe used and improvements installed, connected his pipeline to it and ran the water across plaintiffs' land to the creek, thus eliminating any surplus flow of the water over plaintiffs' land to the creek.

According to plaintiffs' complaint the filling of the natural channel by defendant on his own property and under Lot A (the road easement) caused plaintiffs to construct pipelines and ditches for the protection of their own property, and that they were accordingly damaged to the extent of $3,000.

A third cause of action alleges that during October, November, and December, 1955, defendant did, *on the public highway* in front of plaintiffs' property, destroy certain trees, shrubs and underbrush growing on the edge thereof. An additional sum of $1,000 is claimed for this alleged damage. There is an additional allegation that defendant claims an interest in some form of easement or right of way for ingress and egress over Lot A adverse to plaintiffs and it is prayed that the defendant be required to lower the surface of Lot A to the level of plaintiffs' property.

The court, after finding generally in favor of defendant and against the claims of plaintiffs, specifically found that both plaintiffs and defendant, as owners of lots in said tract, had the right, in common with other owners, to use said Lots A and B (roadways) for road purposes, including necessary slope easements for cuts and fills adjoining portions of said lots; that defendants raised the surface of Lot A adjoining the southeasterly portion of his property but it was reasonably necessary to make said Lot A usable as a roadway; that defendant claims no interest in said easement adverse to plaintiffs and that defendant has not barred plaintiffs from the use of said easement; that it was true that defendant, prior to three years before the filing of plaintiffs' original complaint herein, installed on the bed of the natural water course channel, a pipeline over his property, as indicated, and changed the natural flow of water without the consent of plaintiffs; and that none of the work was done on plaintiffs' property. The court concluded that the alleged cause of action was barred by section 338, subdivision 2 of the Code of Civil Procedure, as pleaded in the answer.

As to the third cause of action, it found that defendant did destroy certain *shrubs* (apparently poison oak), growing on the public highway in front of plaintiffs' land; that defendant's land was in the hills in the country and no actual compensatory damage was suffered. Judgment was entered accordingly. Section 733 of the Code of Civil Procedure, upon which plaintiffs rely for a recovery on this last count would have no application to property of this description.

Plaintiffs, on this appeal, now claim the court erred

in failing to find whether Lot A was dedicated to public use, and whether it was accepted by a public user, the claim being that where a verified map has been recorded by the owner of the property showing lots and streets, this is an offer of dedication, and if the map is accepted, either by formal resolution of the governing body, or by the use of the roadway by the public generally, it becomes a public street, citing 15 California Jurisprudence 2d 298, section 30, and cases cited. The argument is that although there apparently was no acceptance of this roadway by the board of supervisors as a public roadway, it was in fact used as such and accordingly plaintiffs were entitled to rights flowing therefrom, and that no private individual has a right to take away another abutting property owner's right to egress and ingress, citing *Beals* v. *City of Los Angeles*, 23 Cal.2d 381 [144 P.2d 839] ; 15 California Jurisprudence 2d 366, section 67, and cases cited.

It affirmatively appears from the recorded map itself that Lots A and B (the roadway) was dedicated only to and for the use and benefit of the owners of lots in the subdivision, and it specifically dedicated to them the necessary slope easements for cuts and fills adjoining portions dedicated for road purposes. It does not affirmatively appear that the board of supervisors approved this map or accepted any dedication set forth therein. The form of certificate thereon, not signed by the clerk of the board, did affirmatively state that there may be an acceptance on behalf of the public of Silverado Canyon Road, but did not accept Lots ''A'' and ''B'' for highway purposes. It is clear therefrom that there was no acceptance by the board of Lots A and B for public highway purposes. Any evidence of user by the public prior to the construction work done by defendant is only slight compared to the evidence opposed to it and would probably not support a finding of public acceptance. The testimony relied upon by plaintiffs came from plaintiff husband's father that ''There was a road, well defined tracks in there, that had been there evidently—I don't know how long, but for a long time, and we followed those tracks.'' It appears that a jeep and trailer did travel to some extent over this road on occasions. The evidence opposed to it was from a long-time resident of that area. He said, speaking of Lot A, ''That whole area down there was just brush. There was no roads—You could see tracks where a car had gone a few times, but there was no road developed.'' Plaintiffs' evidence falls far short of showing an acceptance of Lot A or B by long adverse public use. (*Crimmins* v. *Gould*, 149 Cal.

App.2d 383, 389 [308 P.2d 786] ; *City of Santa Clara* v. *Ivancovich,* 47 Cal.App.2d 502, 508 [118 P.2d 303] ; *Laux* v. *Freed,* *(Cal.App.) 334 P.2d 988.)

The trial court found against plaintiffs on all issues raised by the pleadings and specifically found any allegation of claimed rights of plaintiffs thereunder to be untrue. The findings of the trial court sufficiently cover the issues as pleaded. A finding that there had been a public user sufficient to support a finding of dedication to public highway purposes would not have been supported by the evidence. Accordingly, plaintiffs could not complain because the court failed to find on this claimed issue although not directly raised by the pleadings. The evidence fully supports the finding that the road work done by the defendant on the roadway, under the dedication authority, was necessary and reasonable, and that the work done by him thereon was duly authorized. It does not appear that any additional burden was cast on plaintiffs' property or that plaintiffs suffered any material damage. In fact, it affirmatively appears that by the improvements here made plaintiffs were greatly accommodated and their property was, no doubt, enhanced in value by it. (*Zimmerman* v. *Young,* 74 Cal.App.2d 623 [169 P.2d 37] ; *Noel* v. *Capobianco,* 218 Cal. 481 [23 P.2d 511] ; *Pacific Gas & Electric Co.* v. *Crockett Land & Cattle Co.,* 70 Cal.App. 283, 284 [238 P. 370] ; *Eastman* v. *Piper,* 68 Cal.App. 554, 569 [229 P. 1002].)

It further appears from the evidence that some 50 or 60 lots were being served by this roadway, including those of plaintiffs, and apparently it was constructed at the expense of defendant. It likewise appears that defendant discussed with plaintiff the cut and fill that defendant contemplated making and that plaintiff husband agreed that defendant could do the work as he had contemplated. The roadway was graded and filled as earlier authorized by plaintiff husband and he then stated that all he wanted was room for a driveway so he could gain access to the roadway (Lot A). It likewise appears that the former road by which plaintiffs gained egress and ingress from Lot A to their property was feasible by means of a ramp which defendant offered to construct for plaintiffs without cost to them; and that by cutting certain overhanging limbs from an oak tree access could be obtained to plaintiffs' property at another level without a ramp; that the question of a bridge to accommodate all persons in the tract was discussed

---

*A hearing was granted by the Supreme Court on April 8, 1959.

with plaintiffs and that a community project was agreed upon; and that later plaintiff husband said he was withdrawing from it and told defendant he wanted all fills removed.

As to the second cause of action, from the pleadings, the evidence and findings, it affirmatively appears that the pipe and sump were installed by defendant, with plaintiffs' full knowledge and consent about December 23, 1952. At that time plaintiff husband wrote defendant he was worried about the drain they were planning; that he wanted to do his part and suggested he bring up his pipe and he would order work done which would connect it to the drain pipe installed by plaintiff and run the water across plaintiffs' property to the creek. Apparently plaintiffs could not claim damages for the cost of pipe where he consented to the improvement in general and agreed to furnish the pipe to run the water across his property. At any rate, any action commenced for damages to an easement or the real property would be barred by the statute of limitations if it could be construed that this was plaintiffs' alleged cause of action. The complaint was filed February 2, 1956, and the alleged damage or injury to their real property occurred and was known to plaintiffs about December 23, 1952. Under those circumstances section 338, subdivision 2 of the Code of Civil Procedure was applicable. In addition, the court found that all the allegations of plaintiffs in each cause of action, contrary to other findings, were untrue, which might well indicate plaintiffs consented to the work being done in the manner it was done, and that no damage resulted to plaintiffs by reason of any acceleration, rather than diversion, of the flow of water. The only testimony of any damage was that plaintiffs' property was worth $13,000 before the installation and $10,000 thereafter. There was no claim of any subsequent flooding of plaintiffs' property after the installation of the pipes. (*Youngblood* v. *City of Los Angeles,* 160 Cal.App.2d 481 [325 P.2d 587]; *Roth* v. *Cottrell,* 112 Cal. App.2d 621 [246 P.2d 958]; *Archer* v. *City of Los Angeles,* 19 Cal.2d 19, 24 [119 P.2d 1]).

After careful examination of the entire record we are convinced that the findings of the trial court are amply supported and the judgment based thereon, was authorized.

Judgment affirmed.

Mussell, J., and Shepard, J., concurred.